**GENERAL SERVICES COMMISSION,**
Petitioner,

v.

**LITTLE–TEX INSULATION
COMPANY, INC.,**
Respondent.

**Texas A & M University and Board
of Regents of Texas A & M
University, Petitioners,**

v.

**Dalmac Construction Company,
Inc., Respondent.**

Nos. 99–1015, 99–1071.

Supreme Court of Texas.

Argued Sept. 20, 2000.

Decided Feb. 1, 2001.

Rehearing Overruled April 5, 2001.

Gregory S. Coleman, Office of Atty. Gen., Austin, William Rich Thompson, II, Austin, Rande K. Herrell, Office of Atty. Gen., John Cornyn, Atty. Gen., Andy Taylor, Linda Eads, Julie Caruthers Parsley, Jeffrey S. Boyd, Office of the Atty. Gen., Austin, for Petitioner in Dkt. No. 99-1015.

Johnathan M. Bailey, Theodore M. Bailey, Jacqueline Zambra Nikodym, San Antonio, for Respondent in Dkt. No. 99-1015.

Julie Caruthers Parsley, Office of the Atty. Gen., Austin, William Rich Thompson, Austin, Patrick J. Feeney, Gregory S. Coleman, Office of the Atty. Gen., John Cornyn, Atty. Gen., Austin, Andy Taylor, Linda Eads, Office of the Atty. Gen., Austin, for Petitioner in Dkt. No. 99-1071.

William M. Coats, Coats Rose Yale Holm Ryman & Lee, Denise Linn Nestel, Greenberg, Peden, Sigmyer & Oshman, Houston, George C. Baldwin, Lloyd Gosselink Blevins Rochelle, Austin, for Respondent. in Dkt. No. 99-1071.

Justice BAKER delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice HANKINSON, and Justice O'NEILL joined, and in which Justice ABBOTT joined except as to Part III(B).

We recently held that the State does not waive its immunity from suit for breach of contract simply by entering into a contract for goods and services. *Federal Sign v. Texas So. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997). We specifically reserved judgment on whether other circumstances may exist in which "the State may waive its immunity by conduct other than simply executing a contract." *Federal Sign*, 951 S.W.2d at 408 n. 1. The Third Court of Appeals has held that by accepting benefits under a contract the State waives its immunity from suit. *DalMac Constr. Co. v. Texas A & M Univ.*, 35 S.W.3d 654 (Tex.App.—Austin 1999); *Little–Tex Insulation Co. v. General Servs. Comm'n*, 997 S.W.2d 358. However, after we issued *Federal Sign*, the Legislature established an administrative procedure for certain breach-of-contract claims against the State. *See* TEX. GOV'T CODE § 2260.001–.108. We conclude that the Legislature intended this procedure to be the exclusive method available for resolving these cases. We therefore reverse the court of appeals' decisions in both cases and dismiss the plaintiffs' claims for want of jurisdiction.

## I. BACKGROUND

### A. *TEXAS A & M UNIVERSITY V. DALMAC CONSTRUCTION Co.*

Texas A & M University contracted with DalMac to build a $30 million recreational

sports building and natatorium. DalMac complained that the initial bid's unclear specifications frequently conflicted, and because of necessary modifications, DalMac incurred expenses beyond the original contract. Urging an adjustment to the contract price, DalMac submitted a claim to TAMU for $2.4 million. TAMU paid only $255,171 of the claim. After exhausting its remedies under the contract, including a TAMU Board of Regents' review, DalMac sued TAMU for more than $3 million. The trial court granted TAMU's plea to the jurisdiction. The court of appeals reversed and remanded the case to the trial court to allow DalMac to discover information necessary to support its theory that TAMU waived its immunity from suit. 35 S.W.3d at 657.

## B. *LITTLE-TEX INSULATION CO. V. GENERAL SERVICES COMMISSION*

The General Services Commission awarded Little–Tex a contract for asbestos abatement on two floors in a state office building. After the State paid Little–Tex's first invoice, a dispute arose between the parties about Little–Tex's performance. The Commission refused further payments until Little–Tex corrected certain safety violations. Never satisfied with those corrections, the Commission eventually terminated the contract. When the termination occurred, Little–Tex had completed thirty percent of one floor.

The abatement contract mandated an administrative review process before filing suit. Accordingly, Little–Tex submitted a claim to the Commission. The Commission's executive director reviewed the claim but denied it in a formal opinion. Little–Tex then sued in district court. The trial court granted the State's plea to the jurisdiction and dismissed the suit. The court of appeals reversed and remanded, holding that the State's acceptance of a benefit from Little–Tex's performance of the contract waived the State's immunity from suit. 997 S.W.2d 358.

## II. BREACH–OF–CONTRACT CLAIMS

### A. APPLICABLE LAW

■ Sovereign immunity, unless waived, protects the State from lawsuits for damages. *Federal Sign*, 951 S.W.2d at 405. Sovereign immunity encompasses two principles: immunity from suit and immunity from liability. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Federal Sign*, 951 S.W.2d at 405; *Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex. 1970). Immunity from suit bars a suit against the State unless the Legislature expressly gives consent. *Federal Sign*, 951 S.W.2d at 405; *Missouri Pac. R.R.*, 453 S.W.2d at 813. Immunity from liability protects the State from judgments even if the Legislature has expressly given consent to sue. *Federal Sign*, 951 S.W.2d at 405; *Missouri Pac. R.R.*, 453 S.W.2d at 813. A party may establish consent by referencing a legislative statute or a resolution granting express legislative permission. *Jones*, 8 S.W.3d at 638. Legislative consent to sue the State must be expressed in "clear and unambiguous language." *University of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994).

■ When the State contracts, it is liable on contracts made for its benefit as if it were a private person. *Federal Sign*, 951 S.W.2d at 405; *State v. Elliott*, 212 S.W. 695, 697–98 (Tex.Civ.App.—Galveston 1919, writ ref'd). Consequently, when the State contracts with private citizens it waives immunity from liability. *See Federal Sign*, 951 S.W.2d at 408. But the State does not waive immunity from suit simply by contracting with a private person. *Federal Sign*, 951 S.W.2d at 408. Legislative consent to sue is still necessary.

### B. ANALYSIS

Little–Tex and DalMac argue that, while the act of contracting alone may not waive immunity from suit, the State's conduct in

these cases has waived its immunity from suit. Because the State has waived its immunity, they argue, it is not necessary to obtain the Legislature's consent to sue. Consequently, they contend, the dispute-resolution procedure that the Legislature recently adopted as a precursor to suits requiring legislative consent does not apply to waiver-by-conduct suits.

### 1. Waiver–by–Conduct Exception to Sovereign Immunity

Little–Tex and DalMac contend that once the State has accepted benefits under a contract, it is unfair to allow the State to shield itself from suit by evoking sovereign immunity. To support this argument, they rely on a footnote in *Federal Sign*, as well as language in its concurring opinion. 951 S.W.2d at 408 n. 1; 951 S.W.2d at 412–13 (Hecht, J., concurring).

In *Federal Sign*, we held that the State's contracting for goods and services does not waive its immunity from suit. 951 S.W.2d at 408. We expressly left open the question of whether the State's conduct may waive its immunity from suit. *Federal Sign*, 951 S.W.2d at 408 n. 1. Several courts of appeals have interpreted our opinion as suggesting that various other fact situations might warrant some judicially-imposed, equitable remedy. *See, e.g., DalMac Constr. Co.*, 35 S.W.3d at 656; *Little–Tex Insulation Co.*, 997 S.W.2d at 364–65; *Aer–Aerotron, Inc. v. Texas Dep't of Transp.*, 997 S.W.2d 687, 692 (Tex. App.—Austin 1999, pet. granted); *Texas Natural Resource Conservation Comm'n v. IT–Davy*, 998 S.W.2d 898, 901–02 (Tex. App.—Austin 1999, pet. filed); *Texas So. Univ. v. Araserve Campus Dining Services, Inc.*, 981 S.W.2d 929, 934–35 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Alamo Community College Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 749 (Tex. App.—San Antonio 1998, pet. denied). In particular, these courts have concluded that, by accepting benefits under the contract, the State waives its immunity from suit. *See DalMac Constr. Co.*, 35 S.W.3d

at 656; *Little–Tex Insulation Co. .*, 997 S.W.2d at 364–65; *Aer–Aerotron, Inc.*, 997 S.W.2d at 692; *IT–Davy*, 998 S.W.2d at 902; *Araserve Campus Dining Servs., Inc. .*, 981 S.W.2d at 935; *Obayashi Corp.*, 980 S.W.2d at 750.

We recognize that language in *Federal Sign* may justify this result. However, regardless of what we might have held in such a case had it come before the Court in 1997, the situation has changed. After *Federal Sign*, the Legislature enacted a dispute-resolution procedure to resolve certain breach-of-contract cases against the State. Historically, we have left to the Legislature whether to waive sovereign immunity. *See Federal Sign*, 951 S.W.2d at 409; *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex.1993); *Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex.1978); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). Today we once again adhere to this principle and defer to the Legislature.

### 2. The Legislature's Statutory Solution and Its Application

In 1999, the Legislature enacted what is now Chapter 2260 of the Texas Government Code. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1352, 1999 Tex. Gen. Law. 4578 (codified at TEX. GOV'T CODE §§ 2260.001–.108). Chapter 2260 retains sovereign immunity from suit in breach-of-contract cases against the State but provides an administrative process to resolve those claims. This administrative scheme applies to all written contracts for the sale of goods, services, or construction. TEX. GOV'T CODE § 2260.001(1). Intended to promote mediation and settlement, Chapter 2260 provides that if a contracting party believes the State has breached a written contract for goods, services, or construction, the party has 180 days to give written notice of the alleged breach to the governmental agency or unit. *See* TEX. GOV'T CODE §§ 2260.001(1), 2260.051(b). The agency's

chief administrative officer must then examine the claim and attempt to resolve the claim through negotiation or mediation. TEX. GOV'T CODE §§ 2260.052, 2260.056. If still unsatisfied, the contracting party may request a contested-case hearing before the State Office of Administrative Hearings. TEX. GOV'T CODE § 2260.102. If the administrative judge determines that the party has a valid claim for less than $250,000, the State must pay the claim, if possible, with money previously appropriated for breach-of-contract claims. TEX. GOV'T CODE § 2260.105. If, however, the judge determines that the party has a valid claim for more than $250,000, the judge issues a written report recommending the Legislature either appropriate funds or deny consent to sue. TEX. GOV'T CODE § 2260.1055. The Legislature, weighing appropriate policy concerns, may accept or reject this recommendation. See generally TEX. CIV. PRAC. & REM.CODE § 107.002.

Little–Tex and DalMac argue that Chapter 2260 does not apply in these cases. First, both contend that the administrative scheme does not apply in waiver-by-conduct cases in general. Alternatively, Little–Tex argues that the scheme does not apply to it because its case was already in litigation when the Legislature passed the Act.

Generally a party seeking redress for a breach-of-contract claim can establish legislative consent for suit by referencing a statute or a resolution granting express permission. See Jones, 8 S.W.3d at 638. Often legislative permission is sought under Chapter 107, which allows parties to petition the Legislature for consent. See TEX. CIV. PRAC. & REM.CODE § 107.001. Chapter 2260 expressly provides that its procedures are a prerequisite to suit under Chapter 107. TEX. GOV'T CODE § 2260.005.

Little–Tex and DalMac do not dispute the statute's express language. Rather, they argue that a party seeking redress under a waiver-by-conduct theory is not

seeking permission under Chapter 107. They contend that the State's conduct already waives its immunity, so consent is not necessary. They conclude that if consent under Chapter 107 is not necessary, then, logically, neither is compliance with Chapter 2260.

To buttress this argument, Little–Tex and DalMac note that the Legislature is presumed to be aware of case law relevant to statutes it amends or enacts. See Fort Worth & D.C. Ry. Co. v. Welch, 183 S.W.2d 730, 736 (Tex.App.—Amarillo 1944, writ ref'd). The Legislature chose Chapter 2260's exclusivity language with full knowledge that two courts of appeals had held that consent to sue under Chapter 107 was not necessary when the State had waived its immunity by accepting benefits under a contract. See Araserve Campus Dining Serv., 981 S.W.2d at 929; Obayashi Corp., 980 S.W.2d at 745. Had the Legislature intended to foreclose this waiver theory, they argue, it could have easily amended Chapter 107 to clarify its procedures applied to breach-of-contract suits regardless of whether the State had received any benefit under the contract.

Because the Legislature passed the Act in 1999, after the court of appeals' decision in DalMac, the court of appeals considered this issue only in Little–Tex. It agreed with Little–Tex's argument and concluded that Chapter 107 does not apply to a plaintiff suing under a waiver-by-conduct theory. Consequently, the court of appeals held that Chapter 2260 does not apply either. Little–Tex Insulation Co., 997 S.W.2d at 365 n. 6. Essentially, the court viewed Chapter 107 and waiver by conduct as alternative routes to the courthouse. The court ruled that any prerequisite to filing suit under Chapter 107—including the prerequisites established under Chapter 2260—is relevant only when a claimant is required to seek legislative consent to sue. Here, the court of appeals concluded, Little–Tex was not so required.

■ We disagree. This argument is premised on the notion that a judicially-imposed, waiver-by-conduct doctrine can exist in the face of the administrative procedure that Chapter 2260 establishes. We could come to Little–Tex and DalMac's suggested outcome only by first concluding that a waiver-by-conduct exception to sovereign immunity can exist whereby a party can sue the State without first obtaining legislative consent under Chapter 107 or some other statute.

We reject Little–Tex's and DalMac's underlying premise. As previously noted, we defer to the Legislature to waive sovereign immunity. Accordingly, we refuse to intercede, in light of the Legislature's enactment of Chapter 2260, by judicially adopting a waiver-by-conduct doctrine.

Furthermore, we are not inclined in this case to impute knowledge to the Legislature of decisions establishing a waiver-by-conduct exception to immunity when the Legislature made its intent clear through the words it choose in Chapter 2260. *See Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278, 282 (Tex.1999) (indicating that the doctrine of legislative silence applies only when the statute is ambiguous). Section 2260.005, entitled, "Exclusive Procedure," expressly provides that "[t]he procedures contained in this chapter are exclusive and required prerequisites to suit in accordance with Chapter 107." Tex. Gov't Code § 2260.005. Because consent through Chapter 107 was the typical means for seeking redress in breach-of-contract cases against the State, there was no need for the Legislature to modify Chapter 107, as Little–Tex and DalMac suggest, to clarify its applicability in this context.

Consequently, we conclude that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature. Chapter 2260's express language states that the administrative proceedings are a precursor to legislative consent to sue under Chapter 107. Tex. Gov't Code § 2260.005. Apart from a special statute conferring consent, a party simply cannot sue the State for breach of contract absent legislative consent under Chapter 107. Compliance with Chapter 2260, therefore, is a necessary step before a party can petition to sue the State.

■ Little–Tex alternatively argues that the Act's language expresses an intent that the new procedure not apply in the current situation. Specifically, Little–Tex points to language exempting claims with respect to which the Legislature has already granted permission to sue and argues that this language indicates the Legislature's intent not to interfere with matters already in litigation. Little–Tex also highlights certain statutory procedures, such as the requirement that a claim be submitted within 180 days of the date on which it arose, and suggests these procedures could not be complied with in cases that have been pending for years after the original event giving rise to the claim. The court of appeals agreed. *Little–Tex Insulation Co.*, 997 S.W.2d at 365 n. 6.

But this conclusion thwarts the Act's unambiguous language. The Act expressly applies to "a claim pending or arising on or after the effective date of this Act, without regard to whether the contract was entered into before, on, or after that date." Act of May 30, 1999, 76th Leg., R.S., ch. 1352, § 12(a), 1999 Tex. Gen. Law. 4578, 4587. Furthermore, if a party had a claim pending when the Act became effective on August 30, 1999, it had 180 days from that date to provide written notice to the appropriate governmental agency or unit. Act of May 30, 1999, 76th Leg., R.S., ch. 1352, § 12(b), 1999 Tex. Gen. Law. 4578, 4587. The only claims exempted from this procedure under the Act are those claims or disputes in which the Legislature has already granted permission to sue. Act of May 30, 1999, 76th Leg., R.S., ch. 1352, § 13, 1999 Tex. Gen. Law. 4578, 4587. Little–Tex's claim was pending on August 30, 1999. Because the Legislature did not grant it permission to

sue, Little–Tex does not fall under the Act's exception. Consequently, Little–Tex had 180 days from August 30, 1999, to comply with the statutory requirements. Its argument that the Legislature did not intend to interfere with matters already in litigation ignores the 180–day provision. The date its cause of action accrued is irrelevant in the legislative scheme. The statute specifically takes into consideration claims already pending in the courts.

■ Accordingly, we reject the argument that Chapter 2260 does not apply in these cases. We conclude that the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract. Absent special statutory consent to sue, a party may not pursue a breach-of-contract claim against the State without participating in Chapter 2260's administrative process.

## III. CONSTITUTIONAL LAW CLAIMS

### A. STANDARD OF REVIEW

■ As an alternative means of affirming the court of appeals, DalMac and Little–Tex both raise certain constitutional claims. An analysis of the constitutionality of a statute begins with a presumption of validity. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex.1996); *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex. 1994); *Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556, 558 (Tex.1985). When possible, we are to interpret enactments in a manner to avoid constitutional infirmities. *Barshop*, 925 S.W.2d at 629; *Texas State Bd. of Barber Examiners v. Beaumont Barber Coll., Inc.*, 454 S.W.2d 729, 732 (Tex.1970). The burden of proof is on those parties challenging this presumption.

*Stamos*, 695 S.W.2d at 558; *Beaumont Barber College, Inc.*, 454 S.W.2d at 732.

### B. DALMAC'S TAKINGS CHALLENGE

DalMac does not raise a claim under the United States Constitution. Rather, it claims the State violated article 1, section 17, of the Texas Constitution.[1] That provision provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. Specifically, DalMac claims TAMU "took" its vested property rights for public use without adequate compensation.

■ Although sovereign immunity bars DalMac's breach-of-contract claims, the doctrine does not shield the State from an action for compensation under the takings clause. *See Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980); *State v. Biggar*, 848 S.W.2d 291, 295 (Tex.App.—Austin 1993), *aff'd*, 873 S.W.2d 11 (Tex. 1994). Whether particular facts are enough to constitute a taking is a question of law. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex.1998).

■ The takings clause prohibits the State from taking a person's property under its sovereign powers without adequate compensation unless by such person's consent. TEX. CONST. art. I, § 17. To establish a takings claim, DalMac must prove (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *See Steele*, 603 S.W.2d at 788–92. DalMac claims TAMU took its labor and materials to build an athletic facility for use as part of its public university. However, the State does not have the requisite intent under constitutional-takings jurisprudence when

---

1. Little–Tex asserted a similar constitutional-takings claim in both the district court and the court of appeals. It did not brief that issue in this Court; therefore, its specific issue is not before us. *See* TEX.R.APP. P. 74(f); *Fredonia State Bank v. American Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex.1994). In addition, DalMac included a footnote in its brief stating that it has alleged other constitutional causes of action. These arguments however are similarly waived for lack of adequate briefing.

it withholds property or money from an entity in a contract dispute. Rather the State is acting within a color of right under the contract and not under its eminent domain powers. As the court explained in *State v. Steck Co.*:

It is clear that the stamps were delivered to the State and its possession of them was by virtue of the contract and not by virtue of a taking within the meaning of Art. I, Sec. 17. Appellee by making the contract, manufacturing the stamps and delivering them to the State did so voluntarily and with its own consent, and can not now say the stamps were taken under the power of eminent domain. Article I, Sec. 17 has reference to the taking of private property under the power of eminent domain.

236 S.W.2d 866, 869 (Tex.Civ.App.—Austin 1951, writ ref'd) (citations omitted); *see also Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract.").

Texas courts have long recognized that the State wears two hats: the State as a party to the contract and the State as sovereign. *See Federal Sign*, 951 S.W.2d at 405; *Elliott*, 212 S.W. at 698. The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers. In this situation, the State does not have the intent to take under its eminent domain powers; the State only has an intent to act within the scope of the contract. *Green Int'l, Inc. v. State*, 877 S.W.2d 428, 434 (Tex.App.—Austin 1994, writ dism'd by agr.).

■ DalMac has not alleged that TAMU is asserting anything other than its colorable contract rights. The State paid DalMac for performance under the construction contract. The State and DalMac simply disagree about DalMac's right to additional payments under the contract. Because TAMU was acting under colorable contractual rights, it did not have the requisite intent to take DalMac's labor and materials under any eminent domain powers. *See Steele*, 603 S.W.2d at 788–92; *Green Int'l, Inc.*, 877 S.W.2d at 433–35; *Steck Co.*, 236 S.W.2d at 869. Accordingly, DalMac's constitutional-takings claim must fail.

### C. LITTLE-TEX'S SEPARATION-OF-POWERS CHALLENGE

Little–Tex asserts, as an alternative means of affirming the court of appeals, that Chapter 2260 violates the separation-of-powers doctrine. It argues that, by reviewing an administrative body's decisions, without opportunity for judicial review, the Legislature acts as an appellate body. It has, therefore, unconstitutionally vested the executive and legislative branches with powers clearly reserved to the judicial branch. Specifically, Little–Tex asserts that, if the Legislature wants breach-of-contract claims resolved by administrative hearings, it can do so constitutionally only if the Judiciary retains its review power.

■ Texas law recognizes no right to judicial review of an administrative order unless (1) a statute provides the right, (2) the order adversely affects a vested property right, or (3) the order otherwise violates some constitutional right. *See Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex.2000); *Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385–86 (Tex. 1967). Here, the Legislature has expressly precluded judicial review of the administrative judge's rulings under Chapter 2260. *See* TEX. GOV'T CODE § 2260.104(f). In addition, Little–Tex has not argued that any order violates a vested property right or other constitutional right. Little–Tex, therefore, has no right to judicial review. Nevertheless, Little–Tex argues that the Legislature improperly vested the judicial power of

"ascertaining the law"—a power clearly reserved for the judicial branch—in the executive and legislative branches. We disagree.

Our Constitution provides for three governmental departments: the Executive, the Legislative, and the Judiciary. TEX. CONST. art. II, § 1. Our Constitution further provides that "no person, or collection of persons, being one of these departments, shall exercise any power properly attached to either of the others." TEX. CONST. art. II, § 1.

■■■■■ The separation-of-powers doctrine prohibits one branch of government from exercising a power inherently belonging to another branch. *See State Bd. of Ins. v. Betts*, 158 Tex. 83, 308 S.W.2d 846, 851–52 (1958). "It is only when the functioning of the judicial process in a field constitutionally committed to the control of the courts is interfered with by the executive or legislative branches that a constitutional problem arises." *Betts*, 308 S.W.2d at 851–52. By establishing a administrative procedure to dispose of breach-of-contract claims against the State, the Legislature did not transfer an inherently judicial function to the executive or legislative branch. Little–Tex mischaracterizes the Legislature as an appellate body. Under Chapter 2260, the Legislature does not have the option to "review" the administrative judge's decision as an appellate court reviews a trial court's decision. The administrative judge's written report is not an order; it is simply a recommendation that the Legislature may accept or reject. In determining which course to follow, the Legislature is faced with policy concerns not presented to the administrative judge. Because the Legislature is not reviewing the administrative judge's decision on the merits, it is not exercising a power inherently or historically belonging to the Judiciary.

Accordingly, Little–Tex's claim that Chapter 2260's claim-resolution procedure violates the separation-of-powers doctrine is without merit. The Legislature simply is not exercising a power inherently belonging to the Judiciary. As such, the Legislature's creating a non-judicial forum to resolve these claims was not a separation-of-powers violation.

## VI. CONCLUSION

We have consistently deferred to the Legislature with regard to sovereign-immunity waivers. The Legislature has chosen to establish an administrative remedy for breach-of-contract cases against the State. In doing so, it has foreclosed the possibility for a waiver-by-conduct exception to the State's immunity from suit in certain breach-of-contract claims. We respect its authority and its initiative to do so. We therefore reverse the courts of appeals' decisions and dismiss DalMac's and Little–Tex's claims for want of jurisdiction.

Justice ABBOTT filed a concurring opinion.

Justice ENOCH filed a dissenting opinion.

Justice ABBOTT, concurring.

I join the Court's opinion except for Part III(B), and write separately to elaborate on DalMac's constitutional-taking claim. As an alternative to its breach of contract claim, which is barred by sovereign immunity, DalMac argues that TAMU violated the Texas Constitution's taking clause by taking DalMac's labor and materials without paying for them. *See* TEX. CONST. art. I, § 17. In rejecting this argument, the Court summarily holds that "the State does not have the requisite intent under constitutional-takings jurisprudence when it withholds property or money from an entity in a contract dispute." 39 S.W.3d at 598. The effect of this language is that a private party may never assert a taking claim when it has contracted with the State. In other words, the State may avoid payment simply by pointing to the existence of the contract, even if the pri-

vate party has already fully performed. But when deciding whether a taking has occurred, courts must determine more than whether a contract exists. I agree with those courts that have inquired whether the State is acting under a colorable contract right to the extent it has a good faith belief that its actions are justified under the contract. But because DalMac has not asserted that TAMU was acting outside a good faith exercise of its colorable contractual rights, I concur in the Court's judgment.

Although the State has the right to take, damage, or destroy private property for public use, that power is subject to the right of the owner to adequate compensation for the taking, damaging, or destruction. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 736 (1941); TEX. CONST. art. I, § 17. It is a well-established rule that the State cannot override the constitutional requirement to provide adequate compensation by asserting sovereign immunity. *See Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980). But under the Court's opinion today, the State can seemingly circumvent this rule simply by pointing to the existence of the contract, labeling its actions a "contract dispute," and asserting sovereign immunity. Although the Court does not so much say this, it is the practical effect of its opinion.

Although DalMac asserts a claim only under the Texas Constitution, we are guided by federal authority in interpreting our Constitution. *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89, 91 (Tex. 1997). This is especially true when limited Texas authority exists and the provisions in the State and Federal Constitutions are similar. *Id.* Although sparse, there is some federal authority considering taking claims in relation to breach of contract claims.

I agree with those authorities that make it clear that more than the mere existence of a contract is required to overcome a taking claim: "[T]aking claims are not presumed to be foreclosed by claims for breach of express contract merely because the claims share the same factual background." *Integrated Logistics Support Sys. Int'l, Inc. v. United States*, 42 Fed. Cl. 30, 34 (1998). Instead, courts must determine whether the State is acting in good faith pursuant to its bargained-for contractual rights. *See, e.g., J.D. Hedin Constr. Co. v. United States*, 197 Ct.Cl. 782, 456 F.2d 1315, 1329 (1972) (finding no taking because the government's action was taken in good faith in accordance with the contract). Because the private party agreed to those rights in bargaining for the contract, it cannot assert a taking claim when the State exercises those rights, and any remedy lies in the contract. *See Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract."). But when the State retains property without payment under some authority other than a good faith assertion of these bargained-for contractual rights, a valid taking claim·exists. The broad language of Article I, Section 17, was intended to protect against this sort of arbitrary government activity.

Even what little-Texas authority there is supports this approach. In *Green International, Inc. v. State*, 877 S.W.2d 428, 434 (Tex.App.—Austin 1994, writ dism'd by agr.), the Third Court of Appeals summarized the law as follows:

> In contractual situations, when the government acts within the procedures outlined in the contract for the withholding of materials and equipment, the government has shown no intent to take under eminent domain. In addition, whenever the government acts within a color of right to take or withhold property in a contractual situation, the government cannot be said to have effected a taking because there was no intent to take, only an intent to act within the scope of the contract. Even if the government were

to withhold property or payment it believed to be due the other party, the government would still be acting within the color of right *to the extent it had a good faith belief that its actions were justified* due to disagreements over payment due or performance under the contract.

*Id.* (emphasis added) (citations omitted). And, in *TRST Corpus, Inc. v. Financial Center, Inc.,* 9 S.W.3d 316, 323 n. 4 (Tex. App.—Houston [14th Dist.] 1999, writ denied), the Fourteenth Court of Appeals reiterated this standard. I agree with this approach because it appropriately protects private contractors from governmental takings in those situations when it cannot be said that the government is asserting its bargained-for contractual rights in good faith.

By effectively limiting its inquiry to whether a contract exists, the Court goes too far and strips private parties of their constitutional protection from governmental takings without adequate compensation even when the State is not acting pursuant to a good faith exercise of its contractual rights. Accordingly, I cannot join Part III(B) of the Court's opinion. Because DalMac does not assert that TAMU was acting other than within a good faith exercise of its colorable contractual rights, however, I concur in the Court's judgment.

Justice ENOCH, dissenting.

Surely, when the State authorizes its various agencies to contract with private parties, it intends those contracts to be binding and enforceable. Otherwise, of course, there is no contract.[1] Thus, by authorizing its agencies to enter into contracts, the State waives its immunity from

both liability and suit for breach of contract claims.[2] There is no other sensible way to read statutes permitting state agencies to contract. This reasoning is every bit as apt as it was in *Kerrville State Hospital v. Fernandez* and *City of La Porte v. Barfield,* where we concluded that sovereign immunity has been waived for state and municipal entities with respect to the Anti Retaliation Law of the Texas Labor Code.[3]

But in *Federal Sign v. Texas Southern University,* the Court presumed sovereign immunity had not been waived and "deferred" to the Legislature's inaction with respect to sovereign immunity in breach of contract suits.[4] Now, the Court chooses to further defer to the Legislature's enactment of chapter 2260 of the Government Code in declining to recognize a waiver of sovereign immunity.[5]

Chapter 2260 itself says only that it doesn't waive sovereign immunity;[6] it says nothing about the circumstances in which immunity would be waived. By its own terms, the statute only applies to suits in which legislative permission to sue under chapter 107 of the Civil Practice and Remedies Code is required.[7] But no such permission is required when immunity has already been waived. The Court concludes there is no waiver here because chapter 2260 forecloses a waiver-by-conduct theory.[8] But the waiver occurred long before Little–Tex and DalMac performed under their contracts. The waiver occurred when the Legislature authorized the General Services Commission and Texas A & M University to enter into con-

---

1. *See Federal Sign v. Texas Southern Univ.,* 951 S.W.2d 401, 418 (Enoch, J., dissenting).

2. *Id.*

3. *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 7 (Tex.2000); *City of LaPorte v. Barfield,* 898 S.W.2d 288, 296–97 (Tex.1995).

4. *Federal Sign,* 951 S.W.2d at 412.

5. 39 S.W.3d at 600.

6. Tex. Gov't Code § 2260.006.

7. *Id.* § 2260.005.

8. 39 S.W.3d at 600.

tracts with private parties that were intended to be binding.[9]

While the State can offer an administrative avenue for resolving breach of contract claims, it cannot by doing so deprive a private party of the right to sue for breach. Under chapter 2260, the State still need not respond at all to its contractual obligations if it is required to pay more than $250,000. But if the State can accept property or labor without being made to pay under its contract, there may be a taking or a due process violation under the state or federal constitution.[10] The Court rejects DalMac's takings claim on the grounds that this is purely a contract dispute.[11] But it is no answer to say there is no taking because a private party consents to the delivery of goods or services by voluntarily contracting with a state entity.[12] DalMac only built a multi-million dollar building for Texas A & M because it expected to be paid under its contract. It defies logic to contend that DalMac continues to consent to Texas A & M retaining the benefits of its labor if Texas A & M refuses to pay and DalMac cannot compel the University to honor its contract.

True, many cases state that a takings claim is inappropriate to determine the rights of the parties created by contract.[13] But these statements are made in two contexts: where the plaintiff alleges a takings claim as an alternative to a contract claim,[14] or where the plaintiff alleges that the state's breach amounts to a constitutional deprivation in violation of 42 U.S.C. § 1983.[15] None of these cases suggests that sovereign immunity bars a breach of contract claim. The point of those cases is, rather, that a contract claim is the appropriate route. As such, those cases don't tell us whether there is a taking if the government both keeps your property *and* withholds the right to sue.

In rejecting both contract suits and constitutional claims, the Court allows the State to present a "heads I win, tails you lose" deal to the parties it contracts with. On the one hand, the State is sovereign, so it can't be sued for a contract breach. On the other hand, the State is acting simply as a private party to a contract, so it can't be sued for a taking. The Court acknowledges that the State "wears two hats" when contracting with private parties, but it refuses to address the consequences of that position .[16]

The Court offers no rationale for retaining sovereign immunity beyond invoking the propriety of deference to the Legislature. Elsewhere, a variety of policy concerns has been suggested to support the doctrine.[17] But, as I have said before, these concerns can be dealt with during

---

9. *See* TEX. GOV'T CODE § 2155.061 (authorizing General Services Commission to acquire goods and services for state agencies); TEX. EDUC.CODE § 85.23(a) (authorizing Texas A & M board to contract for the purchase, acquisition or construction of permanent improvements); *see also Federal Sign*, 951 S.W.2d at 418 (Enoch, J., dissenting).

10. *See Smith v. State*, 289 N.C. 303, 222 S.E.2d 412, 423 (1976); *Wiecking v. Allied Med. Supply Corp.*, 239 Va. 548, 391 S.E.2d 258, 260 (1990).

11. 39 S.W.3d at 600.

12. *Id.* (citing *State v. Steck Co.*, 236 S.W.2d 866, 869 (Tex.Civ.App.—Austin 1951, writ ref'd)).

13. *See, e.g., Sun Oil Co. v. U.S.*, 215 Ct.Cl. 716, 572 F.2d 786, 818 (Cl.Ct.1978); *Consolidation Coal Co. v. U.S.*, 60 Ct.Cl. 608, 626 (1925); *see also Medical Laundry Service v. Board of Trustees*, 840 F.2d 840, 843 (11th Cir.1988) (Roney, C.J., dissenting) (collecting cases).

14. *See, e.g., Sun Oil Co.*, 572 F.2d at 792, 818; *Allenfield Assocs. v. U.S.*, 40 Fed. Cl. 471, 488 (1998) (finding both breach of contract and takings, but noting damages would be based on breach).

15. *See Med. Laundry Serv.*, 840 F.2d at 843.

16. 39 S.W.3d at 599.

17. *See Federal Sign*, 951 S.W.2d at 413–15 (Hecht, J., concurring).

the legislative appropriations process.[18] Indeed, that is by far the preferable place to deal with them. The Legislature should not be able to rely on policy concerns to decide whether to comply with contractual obligations already incurred.

I would hold that the Legislature waived both immunity from suit and immunity from liability when it enacted statutes permitting the General Services Commission and Texas A & M to enter into contracts with private parties. Because sovereign immunity was already waived, chapter 2260 doesn't apply. Thus, I would hold that the trial courts had jurisdiction in these cases, and I would affirm the court of appeals. Because the Court does not, I respectfully dissent.

**18.** *Id.,* 951 S.W.2d at 417 (Enoch, J., dissent- ing).