In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-315 CV


____________________



BEAUMONT STATE CENTER, Appellant



V.



DONALD KOZLOWSKI AS NEXT FRIEND OF BYRON ALLEN, Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-161,639






OPINION


 This is an interlocutory appeal pursuant to Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(8) (Vernon Supp. 2002). Beaumont State Center (appellant) contends the trial
court erred in denying its Plea to the Jurisdiction and Motion to Dismiss. Appellee's
second amended original petition alleges that various negligent acts and omissions on
appellant's part were the proximate cause of his injuries and damages. Appellee's cause
of action is based upon alleged violations of 25 Tex. Admin. Code §§ 404.154-404.155
(2001), and of Chapter 321 of the Texas Health and Safety Code, Tex. Health & Safety
Code Ann. §§ 321.001-321.004 (Vernon 2001). (1) In a case essentially involving the
identical issue, we affirmed the trial court's denial of the governmental entity's plea to the
jurisdiction. See Spindletop MHMR v. Doe, 54 S.W.3d 893, 897 (Tex. App.--Beaumont
2001, pet. filed). We re-affirm our holdings in Spindletop and find them fully applicable
to the issues raised in the instant case. We write further only to address two arguments
not fully raised in Spindletop. 

 Contained in the excellent brief filed by appellant are two points not fully before us
in Spindletop. The first, located within the first appellate issue, essentially contends that
the legislative history of Chapter 321 indicates the statute was intended to be applicable to
private mental health facilities only. Appellant's brief contains a copy of the bill analysis
of Senate Bill (S.B.) 205, the bill that included, inter alia, the provisions of Chapter 321. 
Under the descriptive heading "BACKGROUND," the following paragraphs appear:

 The Senate Interim Committee on Health and Human Services recently
conducted a lengthy study of private psychiatric and substance abuse
facilities in Texas. Three public hearings and an enormous volume of mail
and telephone calls revealed surprising and sometimes shocking activities
taking place in certain private treatment facilities. 


 Among the most common complaints heard by the committee was the
practice of holding a voluntary patient against his or her will, using the "96
hour rule" as justification of the act. Current law states that a patient for
release may be held up to 96 hours following his or her release; certain
facilities told patients they were required to stay for 96 hours following the
request, enabling the facilities to obtain additional insurance benefits. 


 Other common complaints included deceptive or misleading advertising and
marketing practices and the use of marketing personnel in positions more
appropriately suited for counselors. 


 The regulatory agencies involved in the process - the Department of Mental
Health and Mental Retardation (TXMHMR), the Department of Health
(TDH), the Alcohol and Drug Abuse Commission (TCADA) and the
Department of Insurance (TDI) - told committee members their enforcement
capabilities needed to be strengthened in order to halt the abuses taking
place. The committee also found that TXMHMR, TDH and TCADA
received a relatively small amount of information relating to the service
provided in the facilities they regulate, including information on
controversial practices such as electroconvulsive therapy.


 Immediately beneath this "background" information is a paragraph entitled,
"PURPOSE," which provides the following:

 As enrolled, S.B. 205 requires specific boards to adopt a patient's bill of
rights; authorizes appropriate boards to set standards for marketing and
advertising activities of certain treatment facilities, including the use and
operation of telephone counseling and referral services; establishes
administrative, civil and criminal penalties for laws and rules governing the
operation of certain facilities; changes the procedures required for discharge
of voluntary patients from certain facilities; authorizes certain boards to set
standards for intake, assessment and admission of patients to treatment
facilities; sets standards for the transfer or referral of a patient from a private
faculty [sic] to a public facility; establishes standards for the use of
electroconvulsive and similar therapies and requires certain facilities to
submit information relating to mental health and chemical dependency data. 


 The impetus for the bill was apparently a response to information received during
Senate Committee hearings on conditions existing in private mental health facilities. 
Nevertheless, nothing in the language taken from the "purpose" of S.B. 205 even hints that
the particular provisions at issue, Chapter 321, were meant to be applied exclusively to
private mental health facilities only. The language from the "purpose" paragraph applies
the provisions of S.B. 205 to "certain treatment facilities," "certain facilities," and
"treatment facilities." It would have been a simple matter to have placed clear language
of exclusivity into the "purpose" paragraph explicitly limiting application of S.B. 205 to
private facilities, or private treatment facilities. As such, we find the language of the bill
analysis of no assistance to appellant with regard to this argument. 

 The second appellate issue argues that, even if Chapter 321 does provide a
legislative waiver of immunity, Chapter 321 does not apply to appellant because appellant
is a "mental retardation facility," not a "mental health facility" as is ultimately defined
under the provisions of Chapter 321. At the outset, we agree with appellant that contained
within Title 7, entitled "Mental Health And Mental Retardation," (2) are the two subtitles,
viz: "Subtitle C. Texas Mental Health Code," and "Subtitle D. Persons With Mental
Retardation Act." (3) Yet, appellant does not point to any statutory or code provisions that
indicate the "Beaumont State Center" is classified as a mental retardation facility. Indeed,
in a very helpful footnote contained in its reply brief, appellant does refer us to section
532.001 of the Health and Safety Code, which lists specific facilities operated by the Texas
Department of Mental Health and Mental Retardation (T.D.M.H.M.R.). As appellant's
brief points out, the 77th Legislature amended section 532.001 to delete the Beaumont
State Center, and as of midnight, June 13, 2001, the Beaumont State Center ceased to
exist. (4) Nevertheless, the facilities listed along with the Beaumont State Center as those
operated by T.D.M.H.M.R. (5) included the Rusk State Hospital, a facility well-known in
Texas not for its services to the mentally retarded, but to individuals with significant
"mental illness," as that term is defined under section 571.003(14). (6) Therefore, we
essentially have nothing to indicate that appellant is classified exclusively as a "mental
retardation facility" except appellant's bare assertions. Ultimately, however, we do not
rely on appellant's lack of proof of its status as a mental retardation facility in overruling
this appellate issue. Our construction of Chapter 321 as a whole, and section 321.003
specifically, precludes our limiting the statute in the manner appellant argues here.

 When reviewing an interlocutory appeal of a trial court's denial of a plea to the
jurisdiction, appellate courts construe the pleadings in favor of the plaintiff and look to the
pleader's intent. See Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446
(Tex. 1993). If the plaintiff alleges sufficient facts in its petition to establish a waiver of
immunity by the legislature, the reviewing court must affirm the trial court's order denying
the plea to the jurisdiction. See Montgomery County v. Fuqua, 22 S.W.3d 662, 665 (Tex.
App.--Beaumont 2000, pet. denied). As appellant so correctly points out in its brief, in
construing a statute, a court may consider the consequences of a particular construction. 
See Tex. Gov't Code Ann. § 311.023(5) (Vernon 1998). Naturally, appellant goes on
to argue that construing section 321.003 as waiving sovereign immunity would lead to
absurd consequences. See Tex. Health & Safety Code Ann. § 321.003 (Vernon 2001).


 As was the case in Spindletop, neither party contends the plain language of section
321.003 is ambiguous in any way. It is only when a reviewing court's application of the
literal language of a statute produces an absurd result would said court then be permitted
to ignore the literal language. See Fleming Foods of Tex., Inc. v. Rylander, 6 S.W.3d
278, 284 (Tex. 1999). In the instant case, we can perceive no more absurd result than to
interpret the very broad language, as well as the obviously prophylactic intent of the
legislature, of Chapter 321, and specifically section 321.003, to limit its application
exclusively to private mental health and mental retardation facilities, or to limit its
application to facilities that do not provide services solely to the mentally retarded. 

 While patients and clients of state operated mental health and mental retardation
facilities may have recourse to administrative and/or injunctive processes when severe
abuse and/or neglect occurs, this Court will not say that section 321.003 does not permit
them to also sue for damages, but does permit a patient in a private facility (or a patient
in a facility that combines treatment for mental illness and mental retardation) to file suit
for damages. We simply find nothing in the plain language of any of the provisions of
Chapter 321, and specifically section 321.003, that would permit us to make such a
distinction. (7)
 Therefore, construing the pleadings favorably to appellee, we cannot say the
trial court erred in denying the appellant's plea to the jurisdiction. Appellate issues one
and two are overruled. The order denying the plea to the jurisdiction is affirmed. 

 AFFIRMED.



 ______________________________

 RONALD L. WALKER

 Chief Justice


Submitted on January 9, 2002

Opinion Delivered February 14, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. Appellee's second amended original petition actually alleges a violation of
"Sections 321.002-.004 of the Texas Administrative Code." Technically, there are no
sections 321.002-321.004 in the Texas Administrative Code. There appears to be no
confusion among the parties, however, as a subsequent instrument filed by appellee,
"Plaintiff's Response To Defendant's Motion To Dismiss And Plea To The Jurisdiction,"
correctly cites the Texas Health and Safety Code with regard to the provisions of Chapter
321. Appellant's subsequent reply to said response correctly joins the issue. Pleadings
are to be construed so as to do substantial justice. Tex. R. Civ. P. 45 (d). We therefore
construe appellee's second amended original petition to allege a violation of "Sections
321.002-321.004" of the Texas Health and Safety Code, and not the Texas Administrative
Code. 
2. See Tex. Health & Safety Code Ann. §§ 531.001-615.002 (Vernon 1992 &
Supp. 2002).
3. See Tex. Health & Safety Code Ann. §§ 571.001, 591.001 (Vernon 1992).
4. Act of May 22, 2001, 77th Leg., R.S., ch. 893, § 1, sec. 532.001(b), 2001 Tex.
Gen. Laws 1786.
5. See Tex. Health & Safety Code Ann. § 532.001(b) (Vernon Supp. 2001).
6. "Mental illness" means an illness, disease, or condition, other than epilepsy,
senility, alcoholism, or mental deficiency, that: 

 (A) substantially impairs a person's thought, perception of reality, emotional
process, or judgment; or 

 (B) grossly impairs behavior as demonstrated by recent disturbed behavior. 


 See Tex. Health & Safety Code Ann. § 571.003(14) (Vernon Supp. 2002). 
7. Appellant candidly admits it is reasonable to believe that the legislature would want
all mental health facilities in Texas, whether governmental or private, to comply with the
substantive provisions of the "patient's bill of rights." Nevertheless, appellant goes on to
contend it is not uncommon for the State to require those seeking redress from the State
to pursue their claims in an administrative forum rather in the courtroom, citing General
Serv. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 595-97 (Tex. 2001). 
However, as the Court in Little-Tex recognized, in response to a number of breach of
contract lawsuits against the State, the legislature enacted Chapter 2260 in the Government
Code. Id. See Tex. Gov't Code Ann. §§ 2260.001-2260.108 (Vernon 2000 & Supp.
2002). A reading of the provisions of Chapter 2260 indicates the Legislature had no
trouble in making it abundantly clear that, as to contractual claims against the State, it had
no intention of waiving sovereign immunity from either suit or liability. See section
2260.006 - "This chapter does not waive sovereign immunity to suit or liability;" Tex.
Gov't Code Ann. § 2260.006 (Vernon 2000), and section 2260.007, which provides:

 

 (a) The legislature retains the authority to deny or grant a waiver of
immunity to suit against a unit of state government by statute, resolution, or
any other means the legislature may determine appropriate.

 (b) This chapter does not:

 (1) divest the legislature of the authority to grant permission to
sue a unit of state government under terms that the legislature
may specify in the measure granting the permission;

 (2) require that the legislature, in granting or denying
permission to sue a unit of state government, comply with this
chapter; or 

 (3) limit the effect of a legislative grant of permission to sue a
unit of state government unless the grant itself provides that
this chapter may have that effect.


Tex. Gov't Code Ann. § 2260.007 (Vernon Supp. 2002).


It is obvious that the legislature is able to conclusively and precisely put to rest the issue
of waiver of immunity when it chooses to do so.