In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-010 CV


____________________



STATE OF TEXAS, OFFICE OF THE GOVERNOR, 


DIVISION OF EMERGENCY MANAGEMENT, and


TEXAS DEPARTMENT OF STATE HEALTH SERVICES, Appellants



V.



METROCARE EMS, LP, Appellee






On Appeal from the 60th District Court


Jefferson County, Texas


Trial Cause No. B-177,440






MEMORANDUM OPINION


 The State of Texas, the Office of the Governor - Division of Emergency Management,
and the Texas Department of State Health Services (collectively "the State") pursue this
interlocutory appeal from a denial of its plea to the jurisdiction by the trial court. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2006). We reverse and dismiss
Metrocare's suit.

 Plaintiff MetroCare EMS, LP ("MetroCare") sued the State on July 31, 2006, in the
nature of inverse condemnation, initially seeking a variety of damages, including "economic
damages in excess of "$690,000.00[.]" See Westgate, Ltd. v. State, 843 S.W.2d 448, 452
(Tex. 1992) (discussion of law of inverse condemnation). A few months later, MetroCare
amended its petition to add a claim pursuant to the Texas Declaratory Judgment Act. See
Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001 - .011 (Vernon 1997 & Supp. 2006). 
MetroCare's dispute centers on additional money it claims is owed to it by the State for
emergency medical services rendered to the State of Louisiana in the aftermath of Hurricane
Katrina. MetroCare contends the services it provided Louisiana were in response to a
proclamation issued on September 1, 2005, by Texas Governor Rick Perry under certain
Texas statutory authority. See Tex. Gov't Code Ann. §§ 418.001 - .183 (Vernon 2005 &
Supp. 2006) (Texas Disaster Act); Tex. Health & Safety Code Ann. § 778.001 (Vernon
2003) (Emergency Management Assistance Compact).

 In its plea to the jurisdiction, the State contends, inter alia, that the true nature of
MetroCare's claims is a breach of contract action, but that Metrocare's pleadings are couched
in terms of an unconstitutional taking and declaratory judgment in an attempt to circumvent
applicable authority to the contrary. The State reiterates this argument to us in the present
appeal. MetroCare responds that the State has misinterpreted the litigation in question: 

 [A]ssuming the Appellee's pleadings are true, Appellee has alleged a valid
declaratory judgment claim under various State statutes to declare Appellee's
rights in this matter, and that claim is not barred by sovereign immunity.


 . . . .


 Appellant's argument in its Brief implies that somehow Appellee is trying to
bring separate and distinct causes of action created under these two statutes. 
This is incorrect. Appellee is asserting a declaratory judgment claim asking
the Court to declare its rights under these statutes, specifically, whether or not
Appellee has a right to assert an eminent domain, condemnation or takings
claim pursuant to these statutes (which clearly allow for such a claim by their
statutory language), when Appellee's services are specifically used and
commandeered under these statutes. Appellee is seeking a Declaratory
Judgment from the trial court asking the Court to declare its rights under the
statute.


 Sovereign immunity from suit defeats a trial court's subject matter jurisdiction unless
the State expressly consents to suit. Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.
1999). A trial court's ruling on a plea to the jurisdiction is reviewed de novo. Tex. Dep't of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). When reviewing a ruling
on a plea to the jurisdiction, we must determine whether the plaintiff has alleged facts that
affirmatively demonstrate the trial court's jurisdiction. Id. In deciding whether the plaintiff
has affirmatively demonstrated the trial court's subject matter jurisdiction, "we consider the
facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the
evidence submitted by the parties." See Tex. Natural Res. Conservation Comm'n v. White,
46 S.W.3d 864, 868 (Tex. 2001); Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex.
2000). Pleadings are liberally construed in favor of jurisdiction. Peek v. Equip. Serv. Co.
of San Antonio, 779 S.W.2d 802, 804 (Tex. 1989). 

 The Texas Supreme Court has held that a "'private part[y] cannot circumvent the
State's sovereign immunity from suit by characterizing a suit for money damages, such as
a contract dispute, as a declaratory judgment claim.'" City of Houston v. Williams, 216
S.W.3d 827, 828-29 (Tex. 2007) (quoting Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 856 (Tex. 2002)). Additionally, the Texas Supreme Court has made
it clear that only the Texas Legislature can waive sovereign immunity from suit in a breach-of-contract claim. See City of Galveston v. State, 217 S.W.3d 466, 469-71 (Tex. 2007);
Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371, 375 (Tex. 2006); Tooke v. City of
Mexia, 197 S.W.3d 325, 332 (Tex. 2006); Wichita Falls State Hosp. v. Taylor, 106 S.W.3d
692, 695-96 (Tex. 2003). 

 Like MetroCare, the plaintiff in IT-Davy sought a declaratory judgment "only in an
attempt to have the trial court decide its breach-of-contract claim." IT-Davy, 74 S.W.3d at
860. However, MetroCare has neither pleaded nor produced jurisdictional evidence
indicating it has legislative consent -- either by statute or resolution - - to sue the State for any
additional compensation allegedly owed under any putative contract it had with the State. (1) 
Maintaining its declaratory judgment action is proper, MetroCare is requesting that the trial
court declare MetroCare's rights under the two emergency management acts, to permit it to
sue the State under inverse condemnation, a claim for which sovereign immunity does not
shield the State. See Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980)
(Governmental immunity did not shield the City from plaintiff's claim for the government's
destruction of plaintiff's property.). However, it is firmly settled that for the Texas
Legislature to have intended to waive the State's sovereign immunity, the legislative acts in
question must contain a clear and unambiguous expression of the Legislature's waiver of
immunity. See Taylor, 106 S.W.3d at 696. 

 In Taylor, the Texas Supreme Court cited a legislative enactment which read in
pertinent part as follows: "'(a) A treatment facility or mental health facility that violates a
provision of, or a rule adopted under, this chapter . . . is liable to a person receiving care or
treatment in or from the facility who is harmed as a result of the violation. (b) A person who
has been harmed by a violation may sue for injunctive relief, damages, or both.'" Taylor, 106
S.W.3d at 698 (quoting Tex. Health & Safety Code Ann. § 321.003 (a)-(b) (Vernon
2001). As the Supreme Court pointed out, the statute neither expressly, nor by implication,
waives the State's sovereign immunity from suit, notwithstanding the fact that relevant
statutory provisions included state-operated facilities in its definition of "mental health
facility." See id. at 698-99, 701. An examination of the statutes at issue reveals no language
even as compelling as that discussed in Taylor, nor any that could reasonably be construed
as containing a clear and unambiguous waiver of sovereign immunity. Id. at 696. See also
Tex. Gov't Code Ann. § 311.034 (Vernon Supp. 2006). MetroCare's characterization of
its suit as a declaratory action is unsupported by the record evidence and the law. 

 Equally transparent is MetroCare's inverse condemnation claim pursuant to Tex.
Const. art. I, § 17. To establish this exception to the State's immunity from suit, a plaintiff
must show that a governmental actor acted intentionally to take or damage property for a
public use. See Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex.
2001). Whether particular facts are enough to constitute a "taking" is a question of law. Id. 
The jurisdictional facts contained in the record before us fail to establish the type of intent
necessary when the State acts under its eminent domain powers. See State v. Holland, 50
Tex. Sup. Ct. J. 642, 2007 WL 1163699, at *3-4 (Tex. Apr. 20, 2007) (citing Little-Tex, 39
S.W.3d at 598-99). Furthermore, the "absence of an express contract between [plaintiff] and
the State, or uncertainties about the existence of an implied contract between them, are
immaterial to determining the capacity in which the State is acting." Holland, 2007 WL
1163699, at *3. 

 The jurisdictional facts before us lead to the conclusion that, irrespective of any
contract status between the parties, the State did not intend to exercise its eminent domain
powers when it activated MetroCare as an emergency assistance provider to the State of
Louisiana. The jurisdictional evidence originating from MetroCare clearly establishes its
personnel voluntarily proceeded to Louisiana and rendered a variety of emergency services
that were accepted by the State of Louisiana on behalf of its hurricane victims. See generally
id. MetroCare cannot point to any record evidence, and we find none, whereby state
employees or agents of the state physically confiscated emergency medical equipment or
vehicles belonging to MetroCare, or involuntarily drafted or pressed into service any
MetroCare personnel for use in Louisiana in furtherance of hurricane relief. Neither does
the record contain any judicial or executive order, making it mandatory for all emergency
medical providers in the State of Texas, or for MetroCare specifically, to immediately
proceed to the State of Louisiana for hurricane relief duty, or any order imposing civil or
criminal penalties on any emergency medical provider failing or refusing such duty. 

 Whether or not an express or implied contract between MetroCare and the State can
be found, the evidence indicates MetroCare voluntarily provided emergency medical
equipment and personnel to the State of Louisiana following Governor Perry's September
1, 2005, state-of-emergency proclamation. See Holland, 2007 WL 1163699, at *4. It is
undisputed that MetroCare was thereafter reimbursed by the State in the amount of
$460,290.38 prior to the State's securing reimbursement for its expenses from the State of
Louisiana. Additional record evidence indicates that negotiations were taking place prior to
September 1, 2005, in an attempt to have private emergency medical service providers agree
to assist the State of Louisiana with hurricane relief. 

 From all of the above-discussed jurisdictional evidence, we conclude that MetroCare's
declaratory judgment action is, in fact, a suit against the State for purported contractual
reimbursement for which the State has not waived sovereign immunity. We further conclude
that MetroCare has failed to plead and prove the appropriate requisite intent so as to raise a
fact question on whether the State engaged in a "taking" of any MetroCare-owned property
under its eminent domain powers. See Miranda, 133 S.W.3d at 227-28. Because an
eminent-domain type of taking by the State has not been shown, the State is not subject to
suit under article I, section 17 of the Texas Constitution. The trial court erred in denying the
State's plea to the jurisdiction. Therefore, we reverse the trial court's order denying the
State's plea to the jurisdiction and dismiss the cause for lack of jurisdiction. 

 REVERSED AND DISMISSED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on May 3, 2007

Opinion Delivered June 7, 2007



Before Gaultney, Kreger and Horton, JJ.
1. The record indicates MetroCare believed it had a firm agreement with the State
on August 30, 2005, that the State would pay MetroCare "between $5,000 and $5,500 per
day per staffed ALS ambulance." The State's letter to MetroCare, dated September 13,
2005, reads, in pertinent part: "This letter is to verify [] that [Texas Department of State
Health Services] did activate you in the Hurricane Katrina response to provide assistance
to the State of Louisiana under an Emergency Management Assistance Compact. You
will be eligible for reimbursement of reasonable charges since your response was
authorized by the State of Texas. We will notify you on how to submit for reimbursement
once we have that information."