# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-08-00580-CV

---

**Susan B. Combs, Texas Comptroller of Public Accounts, Appellant**

**v.**

**B.A.R.D. Industries Inc., Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-08-001071, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

---

## O P I N I O N

Appellee B.A.R.D. Industries Inc. ("BARD") filed suit against the Comptroller under chapter 74 of the Texas Property Code, appealing the Comptroller's decision that it was not entitled to recover damages in connection with BARD's claim for delivered property. *See* Tex. Prop. Code Ann. §§ 74.501, .506 (West 2007). Additionally, BARD asserted claims against the Comptroller for an unconstitutional taking, denial of due process, and unlawful seizure. Asserting that BARD's chapter 74 and takings claims were barred by sovereign immunity, the Comptroller filed a plea to the jurisdiction, which the trial court denied. We will affirm in part the trial court's order denying the Comptroller's plea to the jurisdiction and reverse and dismiss in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2005, BARD received notice that the Comptroller was holding 155,387 shares of BARD's stock in the Goodrich Petroleum Corporation, which the Comptroller had received from

an unrelated third party as unclaimed property in May 2003. On November 29, 2005, Robert Alpert, BARD's President, sent a letter to the Comptroller claiming the Goodrich stock and instructing the Comptroller not to sell the stock. Alpert also submitted a claim form identifying the Goodrich stock as BARD's property, per the Comptroller's required procedures. *See id.* § 74.501(c) ("All claims to which this section applies must be filed in accordance with procedures, contain the information, and be on forms prescribed by the comptroller.").

On January 20, 2006, the Comptroller notified BARD that all 155,387 shares of the Goodrich stock had already been sold in 2004. The Comptroller tendered BARD a check for $1,157,280, which, according to the Comptroller, represented the proceeds of the sale of all 155,387 shares. Later that year, BARD filed a pre-suit discovery action against the third party from whom the Comptroller had received the shares to determine why its Goodrich stock had been surrendered as unclaimed property and delivered to the Comptroller. On December 19, 2006, after the Comptroller had been served with a copy of BARD's petition in that action, a representative from the unclaimed property division of the Comptroller's office submitted a letter to BARD that stated the following:

> A recent review of your unclaimed property claim #05169072 has revealed an error in the calculated value of 155,387 shares of Goodrich Petroleum stock.
>
> Although only 71,500 shares were actually sold in 2004, with the balance being sold in 2006, the value of this entire stock sale was erroneously calculated on the lower 2004 price. Enclosed is a refund check for $1,337,190.83, which represents the remaining balance owed to B.A.R.D. on the above reference[d] claim.

2

BARD maintains that, prior to receiving this letter, it had not known that the Comptroller had maintained possession of any of its shares of Goodrich stock following receipt of the Comptroller's January 2006 letter informing BARD that all shares had already been sold.

The parties do not dispute that the second sale—*i.e.*, the February 2006 sale of the remaining 83,887 shares—took place three months after the Comptroller received BARD's claim for all 155,387 shares and its instructions not to sell the stock. Nor is it disputed that the Comptroller retained the proceeds from the February 2006 sale until December 2006, when BARD received the "refund check" for the balance owed from the sale of all 155,387 shares.

Asserting that it was entitled to further compensation in addition to the proceeds from the 2004 and 2006 sales of its Goodrich stock, BARD sought review under chapter 74 of the property code. *See id.* § 74.501. After conducting an investigation, the Comptroller's office informed BARD that its claim for additional compensation was denied, asserting that "[t]here is no basis for the payment of such a claim under the Texas Property Code" and stating that the warrant attached to the December 19, 2006 letter "represents the Comptroller's final payment on this claim."

BARD appealed the Comptroller's ruling pursuant to section 74.506 of the property code. *See id.* § 74.506(a), (c)-(d) (providing for de novo review in Travis County district court and waiver of State's immunity from suit with respect to suits brought under this section). BARD alleged that it was entitled to monetary damages because the Comptroller's tender of funds did not fully compensate BARD for damages it suffered as a result of the Comptroller's failure to return BARD's property and promptly tender funds received from the "unlawful sale." Specifically, BARD sought to recover the difference between the value of the stock at the time the Comptroller sold it

3

and the value at its peak on November 30, 2006, which totaled approximately $1,570,062.22. BARD also sought to recover the interest earned on the proceeds of the sale of the 83,887 shares.

In addition to its claims under the property code, BARD asserted constitutional claims for a taking, denial of due process, and an unlawful seizure of its property. BARD alleged that the Comptroller took its property for public use without adequate compensation, intentionally disregarding BARD's rightful claim, refusing BARD's demand that the property be returned, and ordering that the stock be sold three months after BARD asserted its claim. As stated in BARD's amended petition, "[s]elling the stock constitutes taking of the property for public use because the purpose of the Comptroller's action was to generate money for Texas's general revenue fund pursuant to § 74.601(b)(2)." BARD further pleaded that, because compensation for the property was not paid contemporaneously with the taking, but instead was paid "nine months later, after the stock had increased in value," BARD had been denied just compensation.

In response, the Comptroller filed a plea to the jurisdiction, arguing that BARD's claims were barred by sovereign immunity.[1] After a hearing, the trial court denied the Comptroller's plea, and this appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008) (authorizing interlocutory appeal from order denying governmental unit's plea to jurisdiction).

On appeal, the Comptroller argues that the trial court's order should be reversed because (1) BARD failed to meet the jurisdictional requirements of section 74.304(d) of the property

---

[1] Although the Comptroller's plea did not specifically address whether the court had subject-matter jurisdiction over BARD's claims for the due process and unlawful seizure claims, the Comptroller complains on appeal of the denial of its plea to the jurisdiction with respect to these claims. It is well established that subject-matter jurisdiction can be raised for the first time on appeal. *See University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004).

code; (2) BARD has not alleged actions that constitute an unconstitutional taking; (3) the sale of BARD's stock was not an unconstitutional seizure; and (4) BARD failed to state the basis for its lack of due process claim.

## STANDARDS OF REVIEW

Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's jurisdiction are questions of law reviewed de novo. *Id.* at 226. "Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law." *Id.*

In this case, the Comptroller's plea challenged only BARD's pleadings, not the existence of jurisdictional facts. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226-27 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227.

5

Our determination of whether BARD has established a waiver of immunity for its claims arising under the property code involves statutory construction. Statutory construction is a question of law, which we review de novo. *Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). In construing statutes, our primary objective is to give effect to the legislature's intent as expressed in the statute's language. Tex. Gov't Code Ann. § 312.005 (West 2008); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631-32 (Tex. 2008). If the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008).

## DISCUSSION

### *Property Code Claims*

By her first issue, the Comptroller argues that BARD failed to establish a waiver of sovereign immunity for its claims arising under the property code. As the parties acknowledge, section 74.304 grants a limited waiver of sovereign immunity regarding claims against the State for damages to abandoned or unclaimed property in the State's possession. Section 74.304 provides:

> The comptroller is not, in the absence of negligence or mishandling of the property, liable to the person who claims the property for damages incurred while the property or the proceeds from the sale of the property are in the comptroller's possession. But in any event the liability of the state is limited to the extent of the property delivered under this chapter and remaining in the possession of the comptroller at the time a suit is filed.

Tex. Prop. Code Ann. § 74.304(d) (West 2007). Thus, in order to establish a waiver of immunity from liability, the statute imposes the following jurisdictional requirements: (1) the Comptroller

6

must have acted negligently or mishandled the property; (2) damage to the property for which a claimant may recover must have been incurred while the property or the proceeds from the sale of the property were in the Comptroller's possession; and (3) the property must have been delivered under chapter 74 and remained in the Comptroller's possession at the time a suit was filed. *See id.* Conceding that "administrative errors were made in the handling of the shares" of BARD's Goodrich stock, the Comptroller does not dispute that BARD has properly alleged "negligence or mishandling of the property." *See id.* The Comptroller urges, however, that BARD's pleadings fail to assert a claim for damage to property that was delivered to the Comptroller under chapter 74 and was still in the Comptroller's possession at the time suit was filed. *See id.* Because we interpret the statute to require that the "property delivered under this chapter" must be the same property that is "remaining in the possession of the comptroller at the time a suit is filed," *see id.*, we agree with the Comptroller that BARD has failed to state a claim for which immunity has been waived under chapter 74.

In its amended petition, BARD sought to recover damages for "the Comptroller's failure to return BARD's property and to promptly tender funds received from its unlawful sale," which "deprived BARD of the increased value of the securities and the interest earned while in the wrongful possession of the Comptroller." According to BARD's pleadings, the property that was delivered under chapter 74 is the Goodrich stock certificates, while the property that the Comptroller "is still, at the time of filing suit, in possession of" is "BARD's interest that was earned while the Comptroller possessed BARD's property and after BARD asserted ownership." The statute, by its plain language, does not waive immunity unless the property giving rise to damages is *both*

7

"delivered under this chapter" *and* "remaining in the possession" of the Comptroller when suit is filed. *Cf. Whitehead v. Johnson*, 949 S.W.2d 47, 48 (Tex. App.—Eastland 1997, no writ) (construing previous version of section 74.304 and holding that claimant was not entitled to recover under mineral interest he had purchased at tax foreclosure sale when State mistakenly delivered funds to previous interest holder because those funds were no longer remaining in state treasurer's possession at time of suit). Because BARD's pleadings affirmatively negate the existence of subject-matter jurisdiction, we hold that the trial court erred in denying the Comptroller's plea to the jurisdiction with respect to BARD's claims under the property code. *See Miranda*, 133 S.W.3d at 227. We sustain the Comptroller's first issue.

***Unconstitutional Taking***

By her second issue, the Comptroller urges that the facts alleged by BARD do not establish an unconstitutional taking under Article I, section 17 of the Texas Constitution, which provides, in pertinent part: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. Therefore, in order to establish a takings claim, a plaintiff must prove: (1) the governmental entity intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *Texas Workforce Comm'n v. Midfirst Bank*, 40 S.W.3d 690, 697 (Tex. App.—Austin 2001, pet. denied).

Sovereign immunity does not shield a governmental entity from an action for compensation under the takings clause. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007);

*Little-Tex Insulation*, 39 S.W.3d at 598. But when a plaintiff fails to allege facts that constitute a taking, dismissal for want of jurisdiction is appropriate. *Little-Tex Insulation*, 39 S.W.3d at 600 (dismissing inverse-condemnation claim for want of jurisdiction because allegations did not state takings claim). Whether the facts alleged are sufficient to constitute a taking is a question of law. *Id.* at 598.

In its petition, BARD alleged that the Comptroller's failure to promptly return the 83,887 shares, her prolonged retention of the proceeds from its sale, and her continued retention of the interest earned thereon amount to a taking of its property.[2] BARD alleged, and the Comptroller does not dispute, that after being notified of BARD's claim to all 155,387 shares of Goodrich stock, the Comptroller tendered payment purportedly representing the proceeds from the entire sale, in essence recognizing the validity of BARD's claim to the property. All of the intentional actions that BARD identifies in its petition took place after (1) BARD notified the Comptroller of its claim and instructed the Comptroller not to sell the stock and (2) the Comptroller tendered the sales proceeds in alleged satisfaction of BARD's claim of ownership.

A takings claim requires an intentional act of the state. *Steele v. City of Houston*, 603 S.W.2d 786, 792 (Tex. 1980). Mere negligence is not a compensable taking. *Id.* at 790. The question here is whether BARD has alleged that the Comptroller intentionally deprived BARD of its property or that the Comptroller merely acted negligently in failing to return BARD's property.

---

[2] Significantly, BARD does not argue that the Comptroller had no right to possess and dispose of the 71,500 shares that were sold in 2004, contending instead that such use of the property and retention of interest "is constitutional only in the absence of a claim by the owner. Upon a claim by the owner, the use of the property and retention of interest becomes an unconstitutional taking."

"Our supreme court has held that a takings claim must be based on intentional state action that is *within its authority*." *Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys.*, 909 S.W.2d 540, 543 (Tex. App.—Austin 1995, writ denied) (citing *Steele*, 603 S.W.2d at 792; *State v. Hale*, 146 S.W.2d 731, 737 (Tex. 1941)). Only when the state has properly exercised its authority may the state be liable under Article I, section 17. *Id.* (citing *Nussbaum v. Bell County*, 76 S.W. 430, 432 (Tex. 1903)). Governmental entities are not responsible, however, "for damages caused by the neglects or wrongs committed by their officers." *Nussbaum*, 76 S.W. at 432. BARD's pleadings allege that the Comptroller's decision to withhold the interest earned on the proceeds of the February 2006 stock sale was made during the chapter 74 appeals process, whereby the Comptroller is statutorily authorized to review claims such as the one brought by BARD, and that by the authority of the unclaimed property statute, the Comptroller was empowered to use the property for the benefit of the State. Thus, construed liberally and in BARD's favor, BARD's pleadings allege a taking of the interest, based on the Comptroller's intentional acts within the scope of her chapter 74 authority.

The Comptroller's only argument in response to BARD's takings claim is that her actions do not constitute a taking because "the shares at issue were delivered to the Comptroller as unclaimed property" and thus, "there can be no taking of BARD's property as there was no intention by the Comptroller to deprive BARD of its property after the holder's delivery of the property to the Comptroller." This argument, however, does not address BARD's claim as to the delay in returning the stock or the proceeds from the sale thereof, including the interest earned on the proceeds, *after*

10

BARD asserted its claim to the stock in November 2005 or, at the very least, after the Comptroller received the proceeds from the February 2006 sale.

As a basis for recovery of the interest earned from the proceeds after the February 2006 sale, BARD's theory is consistent with this Court's discussion in *Clark v. Strayhorn*, 184 S.W.3d 906 (Tex. App.—Austin 2006, pet. denied). In *Clark*, the plaintiff asserted a takings claim for the interest earned on abandoned property in the Comptroller's possession *before* the plaintiff's assertion of ownership. *Id.* at 909-10. Clark's claim was largely premised on his assertion that the funds in the Comptroller's possession were held in trust for the owner until they were claimed, analogizing to cases discussing an owner's right to interest earned on interpleader funds and IOLTA accounts, *see Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164-65 (1980); *Phillips v. Washington Legal Found.*, 524 U.S. 156, 172 (1998). This Court rejected that argument, holding instead that, under Texas's unclaimed property statute, property is held for the benefit of the State and that "the State's use of unclaimed property and retention of any interest earned *before the owner asserts a claim* is not an unconstitutional taking." *Clark*, 184 S.W.3d at 915 (emphasis added). We stated: "*Until a missing owner asserts a claim*, it is wholly appropriate for the Comptroller to use unclaimed property for the benefit of the State instead of allowing a windfall to a private holder or permitting the funds to lie fallow." *Id.* at 914-15 (emphasis added). The cases we have found from other jurisdictions are consistent with *Clark* in holding that the state's retention of interest earned on presumptively abandoned property *before a claim of ownership is made* is not a taking. *See Cwik v. Topinka*, 905 N.E.2d 300, 306-08 (Ill. Ct. App. 2009); *Rowlette v. State*, 656 N.E.2d 619, 621-26 (N.C. Ct. App. 2008); *Hooks v. Kennedy*, 961 So.2d 425, 430-32

11

(La. Ct. App. 2007); *Smyth v. Carter*, 845 N.E.2d 219, 222-25 (Ind. Ct. App. 2006). *But cf. Sogg v. Zurz*, 905 N.E.2d 187, 190-93 (Ohio 2009) (under Ohio statutory scheme, unclaimed property is not presumptively abandoned; therefore, state's retention of interest earned was unconstitutional taking); *Canel v. Topinka*, 818 N.E.2d 311, 320-25 (Ill. 2004) (although state may retain *interest* earned on presumptively abandoned property, it may not retain *dividends* accruing on unclaimed shares of stock).

In the present case, a claim of ownership was asserted by the owner of the property, and the Comptroller has pointed to no authority indicating that an action under the takings clause in these circumstances is barred. While there is no unconstitutional taking of interest on property that is presumed abandoned, *see Clark*, 184 S.W.3d at 910, once the owner asserts a valid claim to the property, it is no longer presumed abandoned. Thus, an unreasonable retention of the property—or the proceeds from its sale—may constitute a taking. A "temporary" taking requires compensation just as much as a "permanent" taking. *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 318-19 (1987); *see also Morton Grove Park Dist. v. American Nat'l Bank & Trust Co.*, 399 N.E.2d 1295, 1298-99 (Ill. 1980) (retention of landowner's condemnation award during 30-month appeal process constituted taking, and county had to pay landowner interest earned on award).

With respect to the Comptroller's sale of the stock itself, however, BARD has alleged intentional acts that sound in tort, which are not compensable under the takings clause. *See Fireman's Ins.*, 909 S.W.2d at 543. BARD's petition states that the Comptroller "intentionally disregarded BARD's rightful claim to its shares of Goodrich Petroleum stock and ordered that

12

the stock be sold three months after BARD sought its return. . . . The actions of the Comptroller are analogous to an unlawful conversion. BARD owned personal property over which the Comptroller unlawfully exercised dominion." These pleadings do not allege lawful Comptroller actions—a prerequisite for a compensable taking. *See Mac'Avoy v. Smithsonian Institution*, 757 F. Supp. 60, 70 (D.D.C. 1991); *Adams v. United States*, 20 Cl. Ct. 132, 137 (1990).

We hold that the trial court did not err in denying the Comptroller's plea to the jurisdiction with respect to BARD's constitutional takings claim based on the Comptroller's failure to promptly return the 83,887 shares, her prolonged retention of the proceeds from its sale, and her continued retention of the interest earned thereon. Accordingly, we overrule the Comptroller's second issue.

*Seizure*

In her third issue, the Comptroller argues that BARD's pleadings affirmatively show that the State's retention of its property does not constitute a Fourth Amendment seizure. BARD pleaded that the Comptroller's failure to return "the property" following its claim of ownership was an unreasonable seizure for which the State had failed to provide adequate monetary compensation. BARD's petition does not specify whether the property that was allegedly seized refers only to the stock certificates or also to the proceeds from the sale of the stock and the interest earned thereon.

BARD asserted its claim under Article I, section 9 of the Texas Constitution, which is coterminous with claims under the Fourth Amendment of the United States Constitution. *See Flores v. State*, 172 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Violation of the Fourth Amendment requires an intentional acquisition of physical control, which

13

must itself be willful.  *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).  "This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act."  *Id.*  It has also been held that a "seizure" under the Fourth Amendment "connotes a forcible dispossession from the owner."  *Caldwell v. United States*, 338 F.2d 385, 388 (8th Cir. 1964); *accord United States v. White*, 268 F. Supp. 998, 1004 (D.D.C. 1966).  Thus, BARD cannot recover for an unlawful seizure of the stock itself because, having established that the stock was lawfully delivered to and received by the Comptroller as unclaimed property and that the Comptroller was unaware of BARD's claim of ownership at the time of delivery, BARD's pleadings affirmatively negate the necessary element of seizure.  In other words, BARD cannot show that the Comptroller intentionally or willfully acquired control over the stock.

Of necessity, the same is true of the proceeds from the sale of the stock, because the sale simply exchanged one form of a fungible asset for another.  BARD does not assert that the Comptroller received less than fair market value at the time of the sale.

Finally, the same must also be true of the interest earned on the proceeds of the sale during the time that the proceeds remained in the possession of the Comptroller.  The mere accrual of interest on an asset that was initially received lawfully does not amount to the kind of "forcible dispossession from the owner" necessary to constitute a seizure under the Fourth Amendment.  We sustain the Comptroller's third issue.

### *Due Process*

In her fourth and final issue, the Comptroller argues that BARD's pleadings affirmatively show that it was afforded the process due under chapter 74 of the property code for

14

appealing a Comptroller determination, whereby BARD received "notice and the right to be considered." In the Comptroller's view, BARD simply disagreed with the Comptroller's determination that there was no basis for BARD's asserted recovery. We agree.

BARD asserted that it was denied due process by the Comptroller's "unlawful and unconstitutional" deprivation of its property without providing BARD recourse to obtain adequate compensation in contravention of Article I, section 19 of the Texas Constitution. Article I, section 19 provides in relevant part that no citizen shall be deprived of property except by the due course of the law of the land. *See* Tex. Const. art. I, § 19. A due process claim requires the court to determine (1) whether the claimant has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *See University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

We have recognized that BARD has a property interest in the interest earned on the proceeds from the sale of its property, which is the subject of its takings claim. By the proceeding before the Comptroller and by this suit, BARD has been afforded the opportunity to be heard and to seek recourse regarding this alleged deprivation—the very process that it claims to have been denied. BARD may yet be successful in its claim, at least in part. BARD is entitled to no further process. Accordingly, no amendment of BARD's pleadings could give life to its due process claim. We sustain the Comptroller's fourth issue.

## CONCLUSION

We reverse the portion of the trial court's order pertaining to BARD's claims under the property code, for violation of due process, and for a Fourth Amendment seizure; we dismiss

15

those claims for lack of subject-matter jurisdiction. Because BARD has adequately pleaded a takings claim under Article I, section 17 of the Texas Constitution, we affirm the district court's order denying the Comptroller's plea to the jurisdiction as to that claim.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed in Part; Reversed and Dismissed in Part

Filed:   August 26, 2009

16