**Affirmed, in Part, and Reversed and Remanded, in Part, and Memorandum Opinion filed December 20, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00432-CV

---

### MICHAEL D. VAN DEELEN, Appellant

### V.

### SPRING INDEPENDENT SCHOOL DISTRICT, PAMELA FARINAS, AND COREY LEDAY, Appellees

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2016-25720**

---

## M E M O R A N D U M    O P I N I O N

Michael D. Van Deelen, formerly a teacher at Dekaney High School, appeals from the trial court's take-nothing final judgment in favor Spring Independent School District, the school's principal, Pamela Farinas, and the school's assistant principal, Corey LeDay. Concluding that Van Deelen failed to complain about all grounds supporting Farinas's and LeDay's plea to the jurisdiction, failed to allege

sufficient facts to constitute a takings claim under the Texas Constitution,[1] and failed to make a good faith report to the appropriate law enforcement agencies as required by the Texas Whistleblower Act ("TWA")[2] regarding Farina's alleged failure to report certain activities, we affirm the trial court's rulings on those claims. Concluding that Van Deelen raised an issue of material fact as to the TWA claims involving his reports as to a teacher, we reverse the trial court's summary judgment as to those TWA claims. We affirm, in part, and reverse and remand, in part.

## *Background*

Van Deelen was hired as a teacher at DeKaney High School in January 2016. Beginning on January 29, 2016, Van Deelen made multiple reports about what he believed were numerous instances of unlawful drug use and dealing on the school's campus by students and a teacher, Bobby Scott. Van Deelen reported to the school's principal, Pamela Farinas, a number of District officials, the District's police department, and several governmental entities. Van Deelen also reported to the District's police department and many of the same officials and governmental entities that Farinas failed to refer his reports of the alleged drug-related offenses to the District's police department and the relevant municipal police department as required by the Texas Education Code. *See* Tex. Educ. Code § 37.015.

Farinas investigated Van Deelen's allegations of drug use and dealing by students and Scott and determined that the allegations had no merit. Van Deelen claimed that after he reported the drug offenses, several other employees at the school, individually and in concert with one another, began taking adverse personnel actions against him, including reprimands and warnings that he would be terminated

---

[1] *See* Tex. Const. art. I, § 17.

[2] *See* Tex. Gov't Code § 554.001–.010.

2

if he continued to make false allegations concerning drug use and dealing on the school's campus. Farinas recommended to the District's human resources department and director, Deeone McKeithan, that Van Deelen be removed from her campus.

On February 16, 2016, Van Deelen filed a grievance about "employees' retaliation against me for whistleblowing." Two days later, McKeithan informed Van Deelen that he was suspended and prohibited from returning to the school's campus. Van Deelen filed a second whistleblower grievance on February 19, 2016. Van Deelen terminated his grievance proceedings after 60 days, as permitted by the TWA, and filed his original petition on April 22, 2016, against the District and Farinas for violations of the TWA as reflected in his February 16 and 19, 2016 grievances. *See* Tex. Gov't Code § 554.006(d).[3]

Van Deelen amended his petition three times, ultimately suing the District for violating the TWA and the Texas Constitution. Van Deelen alleged District employees took a refrigerator and chair from him for public use the day he was suspended. Van Deelen also sued Farinas and another school employee, Corey LeDay, for defamation.

Farinas and LeDay filed a motion to dismiss and plea to the jurisdiction pursuant to the Texas Tort Claims Act and the immunity provision of the Texas Education Code. The trial court granted Farinas's and LeDay's motion and dismissed Farinas and LeDay from the lawsuit with prejudice. The District moved for summary judgment on the TWA claim and the constitutional takings claim,

---

[3] In April 2016, Van Deelen was notified that the District was terminating his employment, effective at the end of the school year. On April 25, 2016, Van Deelen filed a grievance related to his termination. The school board, after a hearing, upheld his termination. The termination is not part of this appeal.

3

which the trial court granted.[4] The trial court signed its final judgment on May 30, 2017.

Van Deelen brings this appeal from the final judgment. In four issues, he claims that the trial court erred by granting the District's motion for summary judgment and Farinas's and LeDay's plea to the jurisdiction.

A plea to the jurisdiction is a dilatory plea used to defeat a claim without regard to whether the claim has merit. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).[5] Such a plea challenges a trial court's subject-matter jurisdiction. *Id.* We therefore review de novo a trial court's ruling on a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a trial court does not state the basis for granting a plea to the jurisdiction, as here, the appealing party must negate on appeal all possible grounds that could form the basis of that ruling. *Estate of King*, No. 04-15-00271-CV, 2016 WL 3625663, at *1 (Tex. App.—San Antonio July 6, 2016, no pet.) (mem.op.).

We review a trial court's grant of summary judgment de novo as well. *See Mann Frankfort Stein & Lipp Advisors, Inc., v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, such as was granted here, the movant has the burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* (citing Tex. R. Civ. P. 166a(c)). We consider all the evidence in the light most favorable to the

---

[4] Van Deelen's response to the District's motion also requested partial summary judgment on his constitutional takings claim.

[5] The District labelled its pleading as "Rule 101.106 Motion to Dismiss and Plea to the Jurisdiction of Defendants Pamela Farinas and Corey LeDay." We will refer the pleading as a "plea to the jurisdiction" for simplicity's sake. *See generally Smalley v. Smalley*, 436 S.W.3d 801, 805 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (explaining that a motion to dismiss challenging subject matter jurisdiction is the "functional equivalent" of a plea to the jurisdiction).

nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A movant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010)

Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm if any of the independent summary judgment grounds is meritorious. *Lightning Oil Co. v Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

*Analysis*

1.  **Van Deelen failed to negate all possible grounds of the trial judge's ruling as to Farina and LeDay raised in the plea to the jurisdiction.**

In his fourth issue, Van Deelen claims the trial judge erred in granting Farina's and LeDay's plea to the jurisdiction. The trial judge granted the plea to the jurisdiction based on, among other grounds, Farina's and LeDay's immunity under the Education Code.

Section 22.0511 of the Education Code provides in relevant part:

> (a) A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ. Code § 22.0511(a). *See also Robinson v. Brannon*, 313 S.W.3d 860, 865–

66 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Van Deelen failed to challenge this ground on appeal.

If the appealing party fails to negate each ground on which the trial court may have granted the plea to the jurisdiction, an appellate court must affirm. *Estate of King*, 2016 WL 3625663, at *1. Therefore, we affirm the trial court's granting the District's plea to the jurisdiction as to Farina and LeDay.[6]

## 2    Texas Whistleblower Act claims

Sovereign immunity is waived when a public employee alleges a violation of the TWA. *Univ. of Houston v. Barth*, 403 S.W.3d 851, 854 (Tex. 2013) (per curiam). A violation of the TWA "occurs when a governmental entity retaliates against a public employee for making a good-faith report of a violation of law to an appropriate law enforcement authority." *State v. Lueck*, 290 S.W.3d 876, 878 (Tex. 2009).[7] In his first issue, Van Deleen argues the trial court erred in granting the District's motion for summary judgment as to his TWA claims.

### A.    The trial court had jurisdiction over Van Deelen's TWA claims.

As an initial matter, the District claims, without citing any authority, that Van Deelen's whistleblower claim that the District retaliated by suspending him was rendered moot by his subsequent termination. Van Deelen's live pleading specifically states that none of his TWA claims include events occurring after February 2016.

"Mootness occurs when events make it impossible for the court to grant the

---

[6] As a result of our disposition of this issue, we do not reach Van Deelen's Texas Tort Claims Act issue.

[7] We note that, to the extent Van Deelen reported about students violating the law, retaliation for those complaints would not be subject to TWA protection. *See* Tex. Gov't Code § 554.002(a) (prohibiting retaliation against public employee who reports "a violation of law by the *employing governmental entity or another public employee*") (emphasis added).

6

relief requested or otherwise affect the parties' rights or interests." *State ex rel Best v. Harper*, No. 16-0647, 2018 WL 3207125, at \*2 (Tex. June 29, 2018) (internal quotation marks & citation omitted). It is unclear how Van Deelen's subsequent termination by the District would make it impossible for the court to evaluate his claim for damages from events that occurred before that time. Van Deelen is not seeking future lost wages. We hold that the TWA claim for Van Deelen's suspension is not moot.

The District also argues that the trial court lacked jurisdiction over Van Deelen's whistleblower claims because his vague grievances related to retaliation based on Van Deelen's reports of Scott's alleged drug dealing in the school's parking lot or Farinas's alleged failure to report it did not properly invoke the TWA. As a prerequisite to filing suit under the TWA, a claimant must first initiate an action under the grievance or appeal procedures of the governmental employer. Tex. Gov't Code § 554.006(a). This is a jurisdictional requirement, such that compliance is essential to the trial court's jurisdiction over a whistleblower action. *Univ. of Houston v. Barth*, 178 S.W.3d 157, 161–62 (Tex. App.—Houston [1st Dist.] 2005, no pet).

The District asserts that nowhere in either grievance did Van Deelen claim that he was retaliated against for reporting illegal conduct by any District employee. According to the District, Van Deelen's grievance focused entirely on his reports of student drug use. The District asserts that Van Deelen's "passing reference" to "suspected drug dealing taking place in the school parking lot" was too vague to alert the District that he was complaining about retaliation for accusing a teacher of providing drugs to students.

In his February 16, 2016 grievance, Van Deelen alleged that he was the subject of retaliation "for whistleblowing." Van Deelen alleged that he "reported

7

multiple instances of drug use and dealing on" the school campus, including "suspected drug dealing taking place" in the school's parking lot. In the February 19, 2016 grievance, Van Deelen made the same allegations. We conclude that Van Deelen's grievances about retaliation for reporting drug dealing, including such deals taking place in the school parking lot, were broad enough to put the District on notice that he was referring to his many complaints about Scott providing drugs to students in the school's parking lot and Farinas's alleged failure to report the violations to law enforcement. *See Tex. Youth Comm'n-Evins Reg'l Juvenile Ctr. v. Garza*, No. 13-08-00527-CV, 2009WL 1238582, at *9 (Tex. App.—Corpus Christi May 7, 2009, no pet.) (mem. op.).

The District also asserts that, to the extent Van Deelen is relying on verbal reports, they do not satisfy the jurisdictional prerequisites to filing suit. It argues that Van Deelen is constrained to use only the specific grievance procedure provided by the employer, with which Van Deelen was familiar. However, the District's grievance procedures are not in our record.[8] Without a copy of the District's grievance procedures, we cannot say that the trial court lacked jurisdiction over Van Deelen's whistleblower claims, even those based upon verbal reports. *See id.*

**B.** **Van Deelen did not raise an issue of material fact as to whether he reported Farinas's alleged violation of law to an appropriate law enforcement authority**

One ground challenged by the District as to Van Deelen's claim emanating from the report about Farinas was Van Deelen's failure to make his report to appropriate law enforcement authorities. The TWA requires the employee to make

---

[8] Van Deelen attached a copy of the District's grievance procedures to his appellate brief, but we cannot consider documents in an appendix to a brief that are not included in the appellate record. *See Smith v. Smith*, 541 S.W.3d 251, 255 n.7 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In the Interest of C.C.E.*, 530 S.W.3d 314, 317 n.1 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

a report of a violation of law by a public entity or another public employee to an appropriate law enforcement authority that the employee in good faith believes is authorized to (1) regulate under or enforce the law alleged to have been violated in the report; or (2) investigate or prosecute a violation of criminal law. Tex. Gov't Code § 554.002(b). The authority must be statutorily empowered to regulate under or enforce the law allegedly violated. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 685 (Tex. 2013). That is, to constitute an appropriate law enforcement authority under the TWA, the entity must have authority to enforce, investigate, or prosecute violations of the law against third parties outside the entity itself. *Id.* at 686.

An employee seeking the protection of the TWA must prove that the report was made to an appropriate law enforcement authority, or that the employee had a good-faith belief that it was. *Tex. Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 614 (Tex. 2014). "Good faith" under section 554.002(b) means (1) the employee believed the governmental authority was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and (2) the employee's belief was reasonable in light of the employee's training and experience. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002). The particular law the employee reported violated is critical to the determination of an "appropriate law enforcement authority." *Id.* at 320.

In his declaration, Van Deelen stated that he reported Farinas's failure to report drug use and dealing on campus to law enforcement pursuant to Education Code section 37.015 to District Police Chief Mitchell, the Harris County District Attorney's Office, the Texas Education Agency, State Senator Whitmire, the District's assistant superintendent, and the District's human resources director. The District argues that 37.015 is a notification statute that does not create criminal

9

liability for a failure to report. We agree.

Although the statute states that a school principal "shall notify" certain agencies if the principal has reasonable grounds to believe that certain conduct has occurred on school grounds, it provides no consequence for failing to report. A failure to report under 37.015 is not a violation of law. Therefore, there is no appropriate law enforcement authority to whom Van Deelen could have reported. *See Lue*ck, 290 S.W.3d at 878 ("We hold that, because Lueck's e-mail report only warned of regulatory non-compliance, not a violation of law, and because an agency supervisor is not an appropriate law enforcement authority to whom a report should be made, Lueck's allegation affirmatively negates the court's subject-matter jurisdiction over the cause."). Van Deelen could not reasonably have believed that any of the entities to which he reported was empowered to enforce or investigate Farina's alleged violation of section 37.015. We overrule Van Deelen's first issue as it relates to reports concerning Farinas's failure to report.

C.   **Van Deelen raised an issue of material fact whether his report as to Scott was made in good faith.**

The District challenged two elements as to Van Deelen's TWA claim emanating from the report about Scott: (1) that Van Deelen failed to make a good-faith report; and (2) causation. A report of a violation of law under the TWA must be in "good faith." *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 626 (Tex. 2010) (per curiam). An actual violation of law is not required by the TWA. *Id.* at 627 n.3. Instead, the TWA only requires a good-faith belief that a violation of law has occurred. *Id.* The plaintiff must believe that the conduct he was reporting constituted a violation of law, and his belief must have been reasonable based on his training and experience. *See El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 419 (Tex. 2017).

10

Whether an employee has a good-faith belief "turns on more than an employee's *personal* belief, however strongly felt or sincerely held." *Gentilello*, 398 S.W.3d at 683. "[W]hen an employee believes and reports in good faith that a violation has occurred, but is wrong about the legal effect of the facts, he is nevertheless protected by the whistleblower statute." *Mata v. Harris Cty.*, No. 14-11-00446-CV, 2012 WL 2312707, at *3 (Tex. App.—Houston [14th Dist.] June 19, 2012, no pet.) (mem. op.) (internal quotations marks and citation omitted). There is no requirement that the employee have hard evidence to conclusively prove each element of the violation of the law prior to qualifying for whistleblower status. *Id.* Objectiveness is a fact-intensive question determined on a case-by-case basis. *Lane v. Tex. Dep't of Health*, No. 03-02-00578-CV, 2003 WL 21750608, at *3 (Tex. App.—Dallas July 30, 2003, pet. denied) (mem. op.).

Van Deelen's report about Scott, dated February 10, 2016, stated as follows:

> On 1/29/16, I was sitting in my truck having lunch when a student of mine (QW) came to the white [Cadillac] next to my truck. I asked him if the Cadillac was his. He said 'No.' Nevertheless, he had a key to the car. He opened the driver's-side door and opened the console between the seats. In the console were what appeared to be many bottles of pills. He then began texting. After a minute or so, he appeared to put some of the pills in his jacket pocket. He also reached under the passenger seat and appeared to retrieve a small plastic bag. He then left. I reported the incident to Dekaney administrators and Spring ISD police officer Jacks.

> Yesterday, 2/9/16, I observed a teacher who I believe to be Mr. Scott enter the same white Cadillac Deville in the teacher's parking lot. He stayed in the car for approximately thirty seconds. When he exited the car, I saw him place one or two pill bottles in his pocket and head back into the school. I reported this to Mrs. Farinas.

The summary judgment evidence added information gleaned from the District's investigation and discovery in this lawsuit. However, we conclude that the relevant time period for determining Van Deelen's good faith was at the time he made the

11

report about Scott. Therefore, we do not consider evidence of facts unknown at the time of the original report. Whether a plaintiff's belief is reasonable is met by showing that a "reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law." *Tex. Dept. of Criminal Justice v. Terrell*, 18 S.W.3d 272, 276 (Tex. App.—Tyler 2000, pet. denied).

The District argues that Van Deelen had no reason to think that the pills were illegal or that Scott had engaged in illegal activity by allowing students access to his car. In his declaration dated May 5, 2017, Van Deelen stated, consistently with his original report:

> [I] reported that [I] saw a student retrieve pills from a Cadillac Deville in the teachers' parking lot at Dekaney High School. The car subsequently turned out to be owned by teacher Bobby Scott. [I] reported that Bobby Scott was dealing drugs on the Dekaney campus. . . .

> Van Deelen then elaborated on his observations thusly:[9]

> On January 29, 2016, I was sitting in my car in the teacher's parking lot having my lunch. I was parked next to teacher Bobby Scott's car, a Cadillac. I know this was Scott's car because Principal Farinas subsequently told me it was after I had given her the car's license plate number. My car was facing South and Scott's was facing North. (Scott had backed into his space.) Accordingly, my door was only a foot or two away from Scott's driver's door. I saw a student (QW) approach Scott's car and enter it after unlocking its door. The student then immediately opened the console between the front seats of Scott's car. I saw twenty or thirty pill bottles in the console which completely filled the console. The pill bottles were not the type of bottles that commercial products such as vitamins come in. They appeared to be unlabeled. I witnessed the student rummage through the pill bottles, open some of them up, take pills out of the opened bottles, place the pills in a plastic bag, put the pills in his pocket and then exit the vehicle.

---

[9] Van Deelen's declaration also included observations intended to contradict the conclusions of Farinas's investigation. As those statements go beyond Van Deelen's original report, they are not included here.

A few days later, I was parked in the same spot at lunch and so was Scott's car. I subsequently saw Scott come out of the school and enter the same vehicle the student had been in (Cadillac) and retrieve two pill bottles from the console, which again appeared to contain twenty or thirty bottles. They were not labeled with any wording. Scott put the console top back down, exited his car and walked back into the building. As he walked towards the building, he put the pill bottles in his pocket.

The District argues that Van Deelen "jumped to conclusions" that Scott was dealing drugs. We disagree. Van Deelen's declaration explains the bases for his belief. He saw twenty to thirty pill bottles in the console of Scott's car. He watched a student unlock and open the door to Scott's car and immediately open the console, take pills from some of the bottles, put the pills in a plastic bag, and put the bag in his pocket. Van Deelen also witnessed Scott retrieve two pill bottles from his car and take them into the school.

A reasonably prudent teacher with similar training and experience and in similar circumstances could have believed that Scott was involved with, and possibly dealing, illegal drugs. *See City of Elsa*, 325 S.W.3d at 626 (stating that the employee must have believed he was reporting conduct that constituted a violation of law and his belief must have been reasonable based on his training and experience). A material fact issue exists regarding whether Van Deelen had an objective good faith belief that he was reporting that Scott was dealing drugs on the school campus.

### D. Van Deelen raised an issue of material fact as to whether his report on Scott caused his suspension.

The District also challenged Van Deelen's TWA claim as to the Scott report on causation. Although the TWA does not explicitly require the employee to prove a causal link between the report and the subsequent discrimination, the employee must demonstrate all elements of the action, including causation. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000); *see also Alief Indep. Sch. Dist. v. Perry*,

440 S.W.3d 228, 238 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("Beyond satisfying each element of the statute, a whistleblower must also produce evidence that his report of a legal violation caused the adverse personnel action."). "To show causation, a public employee must demonstrate that after he or she reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his or her employer that would not have occurred when it did if the employee had not reported the illegal conduct." *Zimlich*, 29 S.W.3d at 67.

Circumstantial evidence may be sufficient to establish a causal link between the adverse employment action and the reporting of illegal conduct. *Id.* at 69. Such evidence includes (1) knowledge of the report of illegal conduct; (2) expression of a negative attitude toward the employee's report of the conduct; (3) failure to adhere to established company policies regarding employment decisions; (4) discriminatory treatment in comparison to similarly situation employees; and (5) evidence that the stated reason for the adverse employment action was false. *Id.* Evidence that an adverse employment action was preceded by a superior's negative attitude toward an employee's report of illegal conduct is not enough, standing alone, to show a causal connection between the two events. *Id.* The employee need not prove that his reporting illegal conduct is the sole reason for the employer's adverse personnel action. *Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 634 (Tex. 1995).

Relying on Van Deelen's February 19, 2016 whistleblower grievance, the District argues that Van Deelen did not believe that his suspension was motivated by his reports about Scott, but by his reports of student drug use. As addressed above, Van Deelen's grievance was sufficient to include his allegation that Scott was dealing drugs in the school parking lot.

The District further relies on Farinas's declaration. Farinas testified in her

14

declaration that, in a February 12, 2016 memo to the District's human resources department, she recommended that Van Deelen be removed from her campus based on what she believed was "a pattern of false and unwarranted accusations against African-American students and teachers made by Mr. Van Deelen involving drug use." After meeting with Van Deelen, Farinas recommended to McKeithan that Van Deelen be removed from the school based on those unwarranted accusations. Farinas stated that, "[a]lthough his accusation against Mr. Scott was one of my concerns, it did not motivate my decision to recommend his removal from my campus, because I would have recommended Mr. Van Deelen's removal even if had had not made his complaints about Mr. Scott."

In his declaration, Van Deelen stated he reported to Farinas and other school employees, on January 29, 2016, that he saw a student retrieve pills from Scott's car. Over the next two weeks, Van Deelen reported Scott's alleged drug dealing to the District's superintendent, the District's assistant superintendent, the Texas Education Agency, the Drug Enforcement Agency, the District police department, the Federal Bureau of Investigations, state Senator Whitmire, the Harris District Attorney's Office, and McKeithan. Moreover, as previously discussed, Farinas investigated Van Deelen's allegation that Scott was dealing drugs on the school's campus, concluding that the allegations were "unsubstantiated" and "unwarranted."

The TWA provides an affirmative defense if the District had suspended Van Deelen based solely on information, observation, or evidence that is not related to the fact that he made a TWA report. Tex. Gov't Code § 554.004(b). However, the allegations against Scott were part of what Farinas described as a "pattern of false and unwarranted accusations against African-American students and teachers made by Mr. Van Deelen involving drug use." We conclude that there is a material fact issue regarding whether Van Deelen's reporting of Scott's purported drug dealing

15

resulted in his suspension and the District did not conclusively prove its entitlement to a sole cause affirmative defense.[10] We sustain Van Deelen's first issue as to the TWA claims emanating from Van Deelen's reports concerning Scott and conclude that the trial court erred in granting summary judgment as to those claims.

### 3. The trial court did not err in granting summary judgment on Van Deelen's constitutional takings claim.

In his second issue, Van Deelen alleged that the District deprived him of his property—a mini refrigerator and a chair—without adequate compensation or due process of law in violation of Article 1, Sections 17, 19, and 29 of the Texas Constitution. Van Deelen alleged that his refrigerator and chair were taken for public use by teachers, students, and visitors.

Van Deelen tried to take his refrigerator and chair when he was removed from the school on February 18, 2016. Van Deelen told Farinas that he needed to take his refrigerator and chair. He asserts that Farinas acknowledged that the refrigerator and chair belonged to him. Farinas stated in her declaration that she was concerned that Van Deelen was trying to take District property home with him—certain calculators, which they discussed. Farinas maintained that she did not remember Van Deelen asking to take the refrigerator and chair with him.

In Van Deelen's original petition, he sued the District for conversion of his refrigerator and chair and sought monetary damages for those items, in addition to making TWA claims. Van Deelen later dropped his conversion claim and asserted a constitutional takings claim for his refrigerator and chair, still seeking monetary compensation for those items.

---

[10] The District also moved for summary judgment on the ground that the Farinas claim was not a cause of Van Deelen's suspension because McKeithan was not aware of the Farinas claim when he made the decision to suspend him. Because the District negated the element of good faith reporting to an appropriate law enforcement agency as to Farinas, we need not address this ground. *See* Tex. R. App. P. 47.1.

16

Article I, section 17 of the Texas Constitution—the takings clause—prohibits the State from taking a person's property under its sovereign powers without adequate compensation unless by such person's consent. *Gen. Servs. Comm'n v. Little-Tex. Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). A political subdivision of the state, including a public school district, is considered a government agency for purposes of takings claims. *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 285 F. Supp. 3d 989, 996 (S.D. Tex. 2018).

Specifically, the takings clause provides the following:

(a) No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and only if the taking, damage, or destruction is for:

(1) the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:

(A) the State, a political subdivision of the State, or the public at large; . . .

Tex. Const. art. I, § 17. To establish a takings claim, the plaintiff must prove that (1) the State intentionally performed certain acts; (2) that resulted in a "taking" of property; (3) for public use. *Little-Tex. Insulation Co.*, 39 S.W.3d at 598. Whether the facts alleged are sufficient to constitute a taking is a question of law *Id.*

A takings claim requires an intentional act of the governmental entity. *Combs v. B.A.R.D. Indus. Inc.*, 299 S.W.3d 463, 470 (Tex. App.—Austin 2009, no pet.). The liability of the State for taking, damaging, or destroying private property for public use, where the authority is properly exercised, should not be confused with the claim for damages caused by the negligent acts or wrongs committed by its agents or officers. *State v. Hale*, 136 Tex. 29, 37, 146 S.W.2d 731, 737 (1941). In the first class of cases, the taking or damaging of such property is done for the State in the exercise of lawful authority. *Id.* The right to exercise this authority, and the

17

command to adequately compensate the owner for such property, are expressly provided in the section of the Constitution above quoted. *See* Tex. Const. art. I, § 17. For example, where the State has exercised its lawful authority to take or damage private property for the construction of a public highway, it has the power to carry out its plans relating to such highway and compensate the owner of such property for the damages which proximately resulted from the construction of such highway. *See id.* Governmental entities are not responsible, however, for damages caused by the neglects or wrongs committed by their officers. *Combs v. B.A.R.D. Indus. Inc.*, 299 S.W.3d 463, 470–71 (Tex. App.—Austin 2009, no pet.). Mere negligence is not a compensable taking. *Id.* The question here is whether Van Deelen has alleged that the District *intentionally* deprived him of his property or whether the District merely acted negligently in failing to return his property.

McKeithan and Farinas address Van Deelen's property in their respective declarations, which are virtually identical. McKeithan and Farinas each stated that it is not uncommon, when an employee is being escorted from a school campus, to ask the employee to make an appointment after school hours to retrieve personal items. When the school realized that the chair and refrigerator belonged to Van Deelen, the school sent the property to McKeithan's office to handle. McKeithan's office contacted Van Deelen on June 1, 2016, and asked him to come to the office to pick up his property, but Van Deelen refused because he wanted to go through the District's attorneys. McKeithan and Farinas stated that no one used Mr. Van Deelen's property for any purpose during this time period. McKeithan and Farinas asserted that the District did not "take" Van Deelen's property with the intent to use it for anything but, at most, maintained it while it determined who owned the property. Van Deelen asserted in his declaration that, in a March 2017 meeting with McKeithan, he inquired about his furniture, and McKeithan acknowledged that the

18

District was still using it in Van Deelen's former classroom.

Van Deelen confirms that the District tried on several occasions to return his property and that he has refused to retrieve it; he argues that the District has not offered to compensate him for the use of the property. In his live pleading, he states that Farinas acknowledged that the items belonged to him but angrily informed him that he could not remove the items from the school because she was "confiscating" them.

We conclude that the facts alleged by Van Deelen are insufficient to constitute an intentional taking by the District exercising its lawful authority. At most, Van Deelen has alleged "neglects or wrongs committed by" District employees. *See Nussbaum v. Bell Cty.*, 76 S.W. 430, 432 (Tex. 1903) ("Unless made liable on some such ground, counties are not responsible for damages caused by the neglects or wrongs committed by their officers."). The trial court did not err by granting the District's motion for summary judgment on Van Deelen's takings claim and denying Van Deelen's motion for partial summary judgment as to that claim. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) ("When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have."). We overrule Van Deelen's second issue.

### *Conclusion*

We affirm the trial court's judgment granting the plea to the jurisdiction as to Farine and LeDay. We also affirm the trial court's summary judgment in favor of the District on the takings claim. We further affirm the trial court's summary judgment on Van Deelen's TWA claim as to his reports about Farinas and reverse the summary judgment as to his reports about Scott and remand to the trial court.

19

Accordingly, we affirm the judgment, in part, and reverse and remand it, in part.


/s/    Martha Hill Jamison
        Justice


Panel consists of Justices Boyce, Jamison, and Brown.